SUMMIT PUBLISHING COMPANY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Summit Pub. Co. v. Commissioner
Docket No. 3187-88
United States Tax Court
T.C. Memo 1990-288; 1990 Tax Ct. Memo LEXIS 306; 59 T.C.M. (CCH) 833; T.C.M. (RIA) 90288; June 11, 1990, Filed *306 Decision will be entered under Rule 155. Irwin D. Zucker, for the petitioner. William F. Burbach, for the respondent. GERBER, Judge. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent, in a notice of deficiency, determined income tax deficiencies and additions to tax in petitioner's taxable years ended October 31, 1982, and October 31, 1983, as follows: Additions to Tax
Taxable Year Ended
Deficiency
Sec 6653(a)(1) [1]
Sec 6653(a)(2)
Oct. 31, 1982
$ 14,595.00
$   929.00
* Oct. 31, 1983
61,561.00
3,330.80 **
*307 The issues presented for our consideration are: (1) Whether salary paid to one of petitioner's employees is reasonable and therefore deductible; and (2) whether petitioner is liable for additions to tax under sections 6653(a)(1) and (2). FINDINGS OF FACT The parties have entered into a stipulation of facts, along with exhibits, all of which are incorporated by this reference. At all times pertinent to this case, petitioner, Summit Publishing Company, Inc. (Summit), was a Texas corporation with its primary place of business in San Antonio, Texas. During the taxable years ended October 31, 1982, and October 31, 1983, Summit paid corporate officer and employee Marcia J. Mogavero (Mrs. Mogavero) compensation in the amounts of $ 72,780 and $ 183,910, respectively. These amounts were deducted in arriving at Summit's taxable income for the years in issue. Respondent determined that reasonable compensation for Mrs. Mogavero for the taxable years ended October 31, 1982 and 1983, was $ 41,050 and $ 50,083, respectively, and disallowed the difference between the amount claimed and determined. Summit was incorporated during 1977 by Alfred G. Mogavero, Sr. (Mr. Mogavero) who, at all *308 pertinent times, was Summit's sole shareholder and president. Mr. and Mrs. Mogavero were married around the time of petitioner's incorporation and continued to be married throughout the end of the taxable years in issue. Mr. and Mrs. Mogavero were divorced subsequent to the taxable years in issue. Summit's business activity involved the publishing of an inflight magazine for Southwest Airlines (Southwest). Summit also did a limited amount of typesetting, production, layout, and art work for other companies. Southwest did not pay Summit for the magazine, but Southwest did disseminate the magazine to its airline passengers; Summit generated revenues from the magazine's advertisers. Mr. Mogavero began Summit's business activity in 1972. Kenneth E. Lively (Lively) worked for Mr. Mogavero nearly from the beginning and his expertise related to the editing-publishing or creative side of the business activity. Mr. Mogavero's expertise related to sales and management. During 1977, about the same time as the Mogaveros were married, Mrs. Mogavero began to work at Summit. Prior to that time she had no job experience, no formal education beyond high school, or any special skills, other *309 than typing. Initially, Mrs. Mogavero performed routine clerical tasks. In time, and during the years in issue, she performed in the role of an office manager. Lively and Mr. Mogavero were principally responsible for publishing and sales, respectively, with Mr. Mogavero performing as the overall owner-operator of Summit. Mrs. Mogavero supervised the clerical and support personnel, oversaw accounts receivable and payable, and reviewed the credit worthiness of advertisers. Although Summit had an accountant, Mrs. Mogavero did some of the bookkeeping and assisted in the compilation of certain of the financial information necessary for top management. She also assisted in the approval and location or layout of advertisements. Summit was a small company and everyone, including Mrs. Mogavero, performed some of the magazine proofreading. When Mr. Mogavero was away from the business for any extended period of time (generally overnight), Mrs. Mogavero would act on Mr. Mogavero's behalf. Mr. Mogavero was away from the office from 3 to 8 days per month. During the years in issue, Summit generally employed between 16 and 25 employees. The majority of the employees, all of whom were under *310 Mrs. Mogavero's supervision, were employed in the following categories: Bookkeeper, secretary, receptionist, office manager, and credit department personnel. The remainder of the employees were under the direct supervision of Lively. Prior to the years in issue, the number of employees generally increased beginning from 1977 forward. Mr. Mogavero, as owner-operator of Summit, decided to increase Mrs. Mogavero's salary because the business was doing well. For the taxable years ended October 31, 1978, through October 31, 1983, the gross profit of Summit and the compensation of its officers and other employees were as follows: Taxable Yr.
Officers'
Increase
Employees'
Increase
Gross
Increase
Ended
Comp. [2]
(%)
Comp.
(%)
Profit
(%)
10/31/78
$ 80,322
-
$  38,594
- $   484,680
- 10/31/79 152,038
89
67,208
74
748,947
55
10/31/80 200,791
32
121,346
81
1,160,020
55
10/31/81 312,080
55
169,582
40
1,835,566
58
10/31/82 358,864
15
238,013
41
2,649,822
44
10/31/83 623,601
74
303,526
28
3,409,438
29
*311 Comparatively, Mr. Mogavero's and Mrs. Mogavero's compensation for the same periods, was as follows: Taxable Yr.
Increase
Increase
Ended
Mr. Mogavero
(%)
Mrs. Mogavero
(%)
10/31/78
$  52,900
-  $  16,715
- 10/31/79
112,301
112
24,687
48
10/31/80
131,496
17
50,462
104
10/31/81
231,436
76
55,894
11
10/31/82
257,848
11
72,780
30
10/31/83
427,530
66
183,910
153
For all taxable years after the one ended October 31, 1979, Mr. and Mrs. Mogavero also received 15-percent profit sharing paid by Summit and health plan coverage. Mrs. Mogavero also received an annual $ 500 bonus, as did all other employees of Summit. During the taxable years ended October 31, 1982 and 1983, Summit paid cash dividends to its sole shareholder in the amounts of $ 232,690 and $ 382,359, respectively. Judy Christa (Christa) was Promotion Manager of Southwest and was responsible for the in-flight magazine during the years in issue. Her major contacts were with Mr. Mogavero, Mrs. Mogavero and Lively. Christa generally attempted to conduct business with Mr. Mogavero, but would *312 deal with Mrs. Mogavero or Lively when Mr. Mogavero was not available. Christa saw Mr. Mogavero and Lively as responsible for improvement in the editorial quality of the magazine and the driving forces behind Summit. Christa also believed that Summit's success was tied directly to the success of Southwest and its expansion, which permitted more potential for advertisers and, presumably, larger advertising revenue. She felt that sales improvement was attributable to Mr. Mogavero. Christa did not observe editorial or sales activity performed by Mrs. Mogavero, but saw her role as administrative and financial. Mary Ann Garza (Garza) worked for Summit beginning March 1982 as Administrative Assistant to Mr. and Mrs. Mogavero and later as Office Manager of Summit's bookkeeping department. Garza considered Mrs. Mogavero as a part owner, but recognized a distinction as to the level of authority between Mr. and Mrs. Mogavero. Mr. Mogavero looked after major matters and Mrs. Mogavero looked after minor matters. Both Mr. and Mrs. Mogavero put in long hours and took work home in the evenings. Lively was Associate Publisher and Editor of Summit's inflight magazine during the year 1979 *313 through 1984. He worked with Mrs. Mogavero on financial matters, but did not work with her on matters concerning editorial or publication substance. Lively worked with Christa on a monthly basis by telephone. Lively observed Mrs. Mogavero's role as financial and administrative management. He also observed that she performed her job diligently. During the years in issue, Lively supervised six employees and was responsible for hiring, firing and recommending pay raises for employees under his supervision to Mr. Mogavero. Lively believed that Summit's profits increased, in part, due to Lively's creative talents. During the taxable years ended October 31, 1982, and October 31, 1983, Summit compensated Lively in the $ 40,000 to $ 50,000 range. We find as ultimate facts that a reasonable compensation for Mrs. Mogavero for the taxable years ended October 31, 1982, and October 31, 1983, is $ 70,000.00 and $ 85,000.00, respectively. OPINION Section 162(a)(1) allows a deduction for ordinary and necessary business expenses including "a reasonable allowance for salaries or other compensation *314 for personal services actually rendered." There is a two-prong test for deductibility under section 162(a)(1): (1) The amount of the compensation must be reasonable; and (2) the payments must in fact be purely for services. Elliotts, Inc. v. Commissioner, 716 F.2d 1241, 1243 (9th Cir. 1983), revg. on another matter and remanding a Memorandum Opinion of this Court. The inquiry into reasonableness is a broad one and generally subsumes the inquiry into compensatory intent. Elliotts, Inc. v. Commissioner, supra at 1245. Whether compensation is reasonable is a question to be resolved on the basis of an examination of all the facts and circumstances of a case. Charles Schneider & Co. v. Commissioner, 500 F.2d 148, 151 (8th Cir. 1974), affg. a Memorandum Opinion of this Court, cert. denied 420 U.S. 908 (1975); Pacific Grains, Inc. v. Commissioner, 399 F.2d 603, 605 (9th Cir. 1968), affg. a Memorandum Opinion of this Court. The determination of the Commissioner is presumptively correct, and the burden of proving the reasonableness of compensation is upon the taxpayers. Botany Worsted Mills v. United States, 278 U.S. 282 (1929). *315 Many factors are relevant in determining whether compensation is reasonable, and no single factor is decisive; the totality of facts and circumstances must be weighed. Mayson Mfg.Co. v. Commissioner, 178 F.2d 115, 119 (6th Cir. 1949). The parties in this case have focused on about six of the factors enumerated in Foos v. Commissioner, T.C. Memo. 1981-61. In Foos v. Commissioner, supra, the following factors were referenced: 1. Employee's qualifications and training. 2. Nature, extent, and scope of his duties. 3. Responsibilities and hours involved. 4. Size and complexity of the business. 5. Results of the employee's efforts. 6. Prevailing rates for comparable employees in comparable business. * * * 7. Scarcity of other qualified employees. 8. Ratio of compensation to gross and net income (before salaries and Federal income tax) of the business. 9. Salary policy of the employer to its other employees. 10. Amount of compensation paid to the employee in prior years. 11. Employee's responsibility *316 for employer's inception and/or success. 12. Time of the year the compensation was determined. 13. Whether compensation was set by corporate directors. 14. Correlation between the stockholder-employees' compensation and his stockholdings. 15. Corporate dividend history. 16. Contingent compensation formulas agreed on prior to the rendition of services and based upon a free bargain between the employer and employee. * * * 17. Under-compensation in prior years. 18. Compensation paid in accordance with a plan which has been consistently followed. 19. Prevailing economic conditions. 20. Whether payments were meant as an inducement to remain with the employer. 21. Examination of the financial condition of the company after payment of compensation. We have provided the entire list because certain of the categories not specifically mentioned by the parties seem pertinent and/or were discussed by the parties under a different or similar classification. Employee's Qualifications and Training
Respondent argues that Mrs. Mogavero's educational background and training *317 were insufficient to justify the level of compensation claimed by Summit. Petitioner agrees that Mrs. Mogavero "had very limited qualifications" when she began working for Summit in 1977, but that she acquired "extensive on-the-job training" qualifying her for the position held. We agree with petitioner's analysis on this point. If Mrs. Mogavero had been a new employee of Summit, without prior experience, we would have agreed with respondent. In the setting of this case, Mrs. Mogavero had about 3 years experience and had been tested in the position of second-in-command of Summit. Although weight should be given to advanced education, it is likely that actual experience is more significant than academic achievement in the operation and success of a particular business, especially one which is relatively small and unique requiring the personal service of the particular employee. Moreover, when measuring the value of education as opposed to actual experience, greater weight should usually be afforded to actual and successful experience in a particular position or discipline. Although it may have been said that Mrs. Mogavero began her career with Summit principally because her *318 husband was Summit's president and sole shareholder, eventually, employees and a representative of Summit's major "customer" looked to Mrs. Mogavero for management skills and decisions every day in the running of the corporate business. Additionally, she was left in charge of all matters in the absence of the owner-operator (Mr. Mogavero). Nature, Extent, and Scope of Employee's Work
Petitioner contends that Mrs. Mogavero should be characterized as second-in-command of Summit. Respondent counters that Mrs. Mogavero was relegated to the more menial tasks and the major contributions that resulted in Summit's success were made by Mr. Mogavero and Lively. Respondent also argues that Mrs. Mogavero's position (second-in-command) with Summit is "primarily a function of her marriage to [Mr. Mogavero]." To the extent that the subject employee has an ownership interest or is related to the owner, we should carefully scrutinize the question of the reasonableness of compensation. See Charles Schneider & Co. v. Commissioner, 500 F.2d 148, 152 (8th Cir. 1974), affg. a Memorandum *319 Opinion of this Court; Capitol-Barg Dry Cleaning Co. v. Commissioner, 131 F.2d 712 (6th Cir. 1942). In so doing we find that Mrs. Mogavero did not receive, relative to her experience, a large beginning salary when she began working for Summit at a time when all agree that her experience and skill levels were not great. In her first 2 years her compensation was $ 16,715 and $ 24,687. For the same time periods, Mr. Mogavero was paid $ 52,900 and $ 112,301, respectively. It should also be noted that Mr. Mogavero's salary more than doubled and that Mrs. Mogavero's salary increased, for the same period, by about 48 percent. During this same period, Summit's gross profit increased by 55 percent. Beginning in the third year, Mrs. Mogavero's salary more than doubled from $ 24,687 to $ 50,462, at a time when Mr. Mogavero's salary increased only 17 percent from $ 112,301 to $ 131,496. During the first 4 taxable years ending October 31, 1981, Summit's increase in gross profit was about 50 percent per year going from just under one-half million to just under two million dollars. During this same period, the compensation increases to Mr. Mogavero and to Mrs. Mogavero did *320 not rise in tandem. There does not appear to be any pattern to the increases in terms of the percentages or in direct or proportionate relationship to the increases in profits. Moreover, Summit paid cash dividends to Mr. Mogavero (its sole shareholder) in the amounts of $ 232,690 and $ 382,359 for the taxable years ended October 31, 1982, and October 31, 1983, respectively. For the taxable year ended October 31, 1982, the amount of the dividend approached Mr. Mogavero's compensation and was about three times Mrs. Mogavero's salary. For the taxable year ended October 31, 1983, the amount of the dividend was about 89 percent as large as Mr. Mogavero's compensation and was more than two times the size of Mrs. Mogavero's salary. Although this analysis is somewhat superficial, it, to some degree, satisfies our concerns about the potential for abuse in situations where the reasonableness of a spouse's or relative's salary is under scrutiny. There is no clear or obvious plan to avoid tax. Generous dividends (which are not deductible from the gross income of Summit) were paid and Mrs. Mogavero's compensation was not raised based upon similar raises of her spouse. Additionally, the *321 raises seem to correspond to the potential for increased experience and/or increased responsibility facilitated by the passage of time. Moreover, the raises to Mr. and Mrs. Mogavero are not, per se, inappropriate when considering the financial success of Summit. Accordingly, we disagree with respondent's contention that Mrs. Mogavero's pay is, to some great extent, attributable to family nepotism. Mrs. Mogavero's role in the operation and success of Summit falls somewhere between that of Lively and Mr. Mogavero. Ignoring the ownership aspect for purposes of this discussion, Mr. Mogavero was the person clearly in command of Summit. Additionally, his expertise and performance in the sales area was a major factor (likely the most important) in the success of Summit. Likely, on the other hand, was possessed of expertise in the area of editing and publishing and was responsible for the quality of the product that was the basis of Summit's relationship with Southwest. Obviously, if the quality of the in-flight magazine was inadequate, Summit's opportunity to supply the magazine to Southwest would be jeopardized. In this connection, Mr. Mogavero, Mrs. Mogavero and Lively were all *322 involved, to some extent, in maintaining the business relationship between Summit and Southwest, generally through Christa (Southwest's Promotion Manager). Mrs. Mogavero was responsible for the day-to-day administrative and financial operation of Summit. In addition to playing a significant role in the business relationship with Southwest, she was also primarily responsible for matters which had a direct effect on Summit's success. Her review of the credit worthiness of advertisers (customers) would have a direct effect on the profitability of Summit due to the potential for losses from bad debts. She also played some role in the placement of advertisements. Most importantly, Mrs. Mogavero acted on Mr. Mogavero's behalf while he was away on the business of Summit. Because sales are likely the most significant factor in the profitability of Summit, it follows that Mr. Mogavero's time and effort are the most valuable (which is reflected in the salary patterns for all years in evidence). Accordingly, reliance on Mrs. Mogavero's expertise to run the company while Mr. Mogavero is on business travel, in direct and indirect ways, constitutes a real and important contribution to the *323 success of Summit. In summary, we have found that Mrs. Mogavero's importance and contribution to the success and operation of Summit is somewhere between Lively's and Mr. Mogavero's. An analysis of the other factors under consideration will provide some basis for determining the reasonable value or worth of that difference. Summit's Salary Scale and Policy
Here, respondent points to the wide disparity between owner, family members and other nonowner, nonfamily employees, citing, among other cases, Owensby & Kritikos, Inc. v. Commissioner, 819 F.2d 1315, 1329, 1333 (5th Cir. 1987), affg. a Memorandum Opinion of this Court. The analysis on this aspect focuses upon "whether the entity as a whole pays top dollar to all of its employees, shareholder- and nonshareholder-employees alike." Owensby & Kritikos, Inc. v. Commissioner, 819 F.2d at 1330. In this case total officer's compensation increased 89, 32, 55, 15 and 74 percent during the taxable years ended October 31, 1979 through October 31, 1983, respectively. Total employees' compensation increased 74, 81, 40, 41, and 28 percent during the taxable years ended October 31, 1979, through *324 October 31, 1983, respectively. These figures are not fully comparable because the number of officers remained constant during that period and the number of employees increased during that same period. Accordingly, some of the increases to total employees compensation is attributable to the addition of new employees, rather than increases to the compensation of existing employees. During the 2 taxable years in issue, however, the number of employees did not appear to have increased by a significant amount. Accordingly, during the taxable years in issue, the employees' increases would be more comparable to those of officers. During the 2 years in issue, total officers' compensation increased 15 and 74 percent and total employees' compensation increased 41 and 28 percent. Although one might argue that, overall, officers' compensation (on a percentage basis) was increased somewhat more than employees' compensation, we find that petitioner appears to have had a relatively generous policy regarding the increases of officer and employee compensation. We also note that, in a relative sense, it may be appropriate to give larger raises to the officers, as opposed to other employees, *325 if the officers' efforts were more instrumental to the success of the business. Accordingly, we do not agree with respondent's analysis that cases like Owensby & Kritikos, Inc. v. Commissioner, supra, would operate to defeat petitioner's position in this case. Compensation in Prior Years Size and Complexity of the Business
Regarding this aspect, respondent argues that Mrs. Mogavero's "salary increased from $ 16,715.53 per year to $ 183,910.00 per year over a period of only five years." Respondent cites several cases for the proposition that increases in salary should be a result of increases in responsibility. See, e.g., Rutter v. Commissioner, 853 F.2d 1267 (5th Cir. 1988), affg. a Memorandum Opinion of this Court. Petitioner agrees that Mrs. Mogavero's salary was low and her experience was limited when she started with petitioner. Petitioner, however, argues that Mrs. Mogavero's salary increased in accord with her increased responsibilities in subsequent years. Petitioner cites a few cases supporting that proposition. E.g., Atlantic-Pacific Manufacturing Corp. v. Commissioner, a Memorandum Opinion of this Court dated January 23, 1945. *326 For the taxable years ended October 31, 1982 and 1983, Mrs. Mogavero's compensation was $ 72,780 and $ 183,910, respectively. Respondent determined that reasonable compensation for Mrs. Mogavero for the taxable years ended October 31, 1982 and 1983 was $ 41,050 and $ 50,083, respectively. Accordingly, respondent agrees that Mrs. Mogavero is entitled to about two and one-half to about three times her original salary of $ 16,715.53 about 5 years before. We assume that some of the increase determined by respondent may be attributable to increased expertise, increased responsibilities, inflation, and the improved business success of Summit. Considering that Summit's business was so successful, the number of employees supervised increased, inflationary indexing may have played a role, and Mrs. Mogavero played a significant role in some areas of the business which helped the business success, we believe that respondent has not determined sufficient compensation to Mrs. Mogavero for the years before the Court. Prevailing Rates of Compensation in the Industry
Here respondent argues that two of petitioner's witnesses provide the basis for arguing that prevailing compensation for *327 Mrs. Mogavero's job "were far below those paid to her by" Summit. Respondent relies on Lively's testimony and that of "Mr. Friedman." Initially, we note that Mr. Friedman was not permitted to testify because of respondent's objection to his qualifications regarding his ability to provide an expert opinion in the area of executive compensation in this case. Accordingly, we find it surprising that respondent should refer to or rely upon Mr. Friedman on brief. Concerning Mr. Lively, he was not qualified as an expert and we do not rely upon his testimony for that purpose. To the extent that he was an employee of Summit during the years in issue and performed some management, editing, and publishing activity, we have referred to his salary and expertise. Accordingly, neither petitioner nor respondent has established, by expert testimony, or otherwise, the prevailing rates of compensation in this industry. We are herein limited to considering whether Mrs. Mogavero's salary is reasonable based upon the facts in the record. Comparison of Salaries Paid with Summit's Gross and Net Income
Respondent argues that as Summit's profits increased the Mogaveros' attempted to "remove *328 as much of the increased profits from the corporation without paying corporate tax." Petitioner argues that Mrs. Mogavero's salary was 2.71 and 5.34 percent of gross income and 7.55 and 13.42 percent of net income for the taxable years in issue. For the same 2 years Summit paid dividends to Mr. Mogavero (its sole shareholder) in the amounts of $ 232,690 and $ 382,359, which represented 24.14 and 27.89 percent of net income in those same 2 taxable years. The relatively sizeable dividends paid by petitioner (in addition to a relatively large salary to its president and sole shareholder) substantially diminish respondent's argument that there was a motive of tax avoidance in this case. Summary
Our review of the record in this case results in our conclusion that Mrs. Mogavero's responsibilities and contribution to the success of Summit fell somewhere between those of Lively and Mr. Mogavero. Although Lively was also somewhat responsible for a part of the business which contributed to the financial success, his management contribution was less than Mrs. Mogavero's. Additionally, Mrs. Mogavero did have certain responsibilities which directly contributed to the success of the *329 business, including her overall management of day-to-day administrative aspects, consideration of credit worthiness of advertisers, development of management's financial data, help in the placement of advertisements, relationship with Southwest (the source of most revenue), and most importantly, acting, on a regular basis, on behalf of Mr. Mogavero while he was away from the business premises. Based upon these considerations, we have found that Mrs. Mogavero's reasonable salary for the taxable years ended October 31, 1982 and October 31, 1983 is $ 70,000 and $ 85,000, respectively. Addition to Tax Section 6653(a)(1) and (2)
Respondent has determined that petitioner is liable for an addition to tax for negligence and intentional disregard of the rules and regulations in both taxable years. The only other issue before us concerns whether Mrs. Mogavero's compensation was reasonable. Petitioner bears the burden of showing that respondent's determination is in error. Bixby v. Commissioner, 58 T.C. 757, 791 (1972), Rule 142(a). Petitioner, considering the facts of this case, has shown that the amount reported as compensation for Mrs. Mogavero for the *330 taxable year ended October 31, 1982, was substantially reasonable. Accordingly, we find that petitioner is not liable for the section 6653 (a)(1) and (2) addition to tax for its taxable year ended October 31, 1982. On the other hand, petitioner reported compensation of $ 183,910 for Mrs. Mogavero for the taxable year ended October 31, 1983. We have found that only $ 85,000 of that amount was reasonable. Accordingly, we find that petitioner is liable for an addition to tax under section 6653(a)(1) and (2) for the taxable year ended October 31, 1983. To reflect the forgoing and concessions of the parties, Decision will be entered under Rule 155.
Footnotes
1. Section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years in issue. Rule references are to the this Court's Rules of Practice and Procedure.↩
*. 50 percent of the interest due on $ 18,576.00 ** 50 percent of the interest due on $ 66,616.00 ↩
2. All information is taken from Summit's U.S. Corporation Income Tax Returns, Forms 1120. Each of the returns reflect the officers as Mr. Mogavero, Mrs. Mogavero and Albert G. Mogavero, Jr., (presumably Mr. Mogavero's son). All amounts have been rounded to the nearest dollar.↩