KUSKIN, J.T.C.
Plaintiff is a New Jersey corporation which operates a retail store in Avenel, New Jersey. The store sells adult-oriented books, periodicals, novelties, and videotapes and includes a segregated area which contains twenty-seven booths used to view adult videotapes. Defendant determined that certain payments by plaintiff to its store manager, who is also the president and sole shareholder of plaintiff, for the fiscal years ending October 31, *171 1988 through October 31, 1992 were dividends and not compensation as reported by plaintiff in its Corporation Business Tax returns. Based upon this determination, defendant disallowed plaintiffs deduction of such payments for purposes of calculating its “entire net income” for Corporation Business Tax purposes under N.J.S.A. 54:10A-5(c), and defendant imposed a Corporation Business Tax deficiency assessment. Defendant also determined that, for the period January 1988 through March 1995, customer purchases of tokens required in order to enter the viewing booth area, or to use the viewing booths, constituted payments of admission charges “to or for the use of [a] place of amusement” subject to Sales Tax under N.J.S.A. 54:S2B — 3(e)(1), and imposed a Sales Tax deficiency assessment. Plaintiff appeals both assessments.
The parties submitted a Stipulation of Facts with relevant documents attached, and, thereafter, defendant moved for summary judgment. With the consent of counsel for defendant, plaintiff presented the testimony of two witnesses at the hearing on the motion. See R. 1:6-6. At the conclusion of the testimqny, and after oral argument, counsel for both parties further stipulated that, if summary judgment was denied based on the existence of a genuine issue as to a material fact under R. 4:46-2(e), neither would submit any evidence in addition to the stipulated facts and attached documents, the facts contained in the certification submitted by defendant in connection with the motion, the facts contained in the testimony presented by the plaintiff, and the exhibits placed in evidence in connection with such testimony. Both counsel agreed, therefore, that, if the court denied summary judgment, the court could proceed to decide the matter on the merits as if a lull trial had occurred.
The facts set forth above, and the following facts, are either included in the Stipulation of Facts or are undisputed. Plaintiffs store is open for business seven days a week, twenty-four hours a day. During the period November 1, 1987 through October 31, 1992, John Mastrolacasa was the President of plaintiff, served as store manager, and worked in excess of seventy hours per week. *172 As compensation for his services during such period, Mr. Mastrolacasa received a regular salary from plaintiff from which New Jersey Gross Income Tax and federal income tax were withheld. Plaintiff issued annual W-2 Forms to Mr. Mastrolacasa reflecting such salary and withholding. Mr. Mastrolacasa also wrote corporate checks to himself for varying amounts at varying times during each fiscal year. No New Jersey Gross Income Tax or federal income tax was withheld with respect to those payments, and plaintiff issued no W-2 Forms or other reporting forms reflecting the payments. Mr. Mastrolacasa determined the timing and amount of each payment based upon the availability of cash in plaintiffs business. Plaintiff did not adopt corporate resolutions or prepare corporate minutes authorizing or memorializing any of these payments to Mr. Mastrolacasa. The total of the salary and additional amounts paid to Mr. Mastrolacasa for each fiscal year in issue constituted reasonable compensation to him for services rendered to plaintiff.
The Corporation Business Tax returns filed by plaintiff for each of the fiscal years ending October 1, 1988 through October 31, 1991, reported as “Officers Compensation” the total of the basic salary and the additional amounts paid to Mr. Mastrolacasa. For each of those years, no amount was reported on the returns as “Salaries and Wages” paid to Mr. Mastrolacasa. For the fiscal year ending October 31, 1992, the amount shown on the Corporation Business Tax return as “Officers Compensation” reflected only the corporate checks mitten by Mr. Mastrolacasa to himself. His regular salary was included on the “Salaries and Wages” line of the return. For each fiscal year Mr. Mastrolacasa was the only officer receiving the Officers Compensation reported on the tax return, and for each fiscal year plaintiff deducted the amount reported as Officers Compensation in calculating plaintiffs liability for Corporation Business Tax.
Defendant determined that payments by plaintiff to Mr. Mastrolacasa in excess of the salary from which taxes were withheld constituted dividends and not compensation. Consequently, defendant disallowed a portion of the deduction for “Officers Com *173 pensation” for each of the fiscal years ending October 31, 1988 through October 31, 1991, and disallowed the entire deduction for the fiscal year ending October 31, 1992. The following table sets forth, for each fiscal year, the amount claimed by plaintiff as compensation to Mr. Mastrolacasa, the amount defendant allowed as a deduction, and the additional tax claimed by defendant.
Total Mastrolacasa Fiscal Year Ending October 31 Compensation As Shown on Tax Return_ Deduction Allowed by Director Additional Tax Claimed
1988 $163,725 $44,680 $ 7,686
19S9 $103,825 $45,800 $ 6,230
1990 $100,370 $55,080 $ 6,006
1991 $153,852 $49,500 $ 9,898
1992 $158,990 $55,650 $14,607
The total assessment against plaintiff for Corporation Business Tax, including interest through April 15, 1997, was $82,188.27.
As described above, plaintiffs store premises contained a segregated area in which twenty-seven viewing booths were located. The booth area extended along the side and rear walls of the premises. Each booth contained a viewing device which was operated by the deposit of a token. Each device could display either ten or sixteen different videotapes. A person entering the booth deposited a token, and then could view approximately one minute of any one of the available videotapes. Each videotape had a total playing time of approximately two hours. The person could not deposit more than one token at a time, and, at the end of the one minute period, the videotape stopped, and would continue for another one minute only upon deposit of another token. Access to the booth area was controlled by an employee of plaintiff. In genei-al, a person seeking access to the area was required to purchase a minimum of $3 of tokens, each token having a value of $0.25. The tokens had no expiration date. No purchase of tokens was required in order to enter the balance of the store premises. The minimum token purchase requirement was instituted by Mr. Mastrolacasa at the suggestion of municipal *174 officials who advised him that, by imposing the requirement, he would eliminate, or at least limit, loitering in the booth area.
Not all patrons were required to purchase $3 of tokens in order to gain access to the booth area. Persons known to Mr. Mastrolacasa, or the attendant controlling access to the area, to be neither trouble-makers nor loiterers were permitted to enter without the purchase of any tokens. In general, a person who had purchased tokens on one occasion and did not use all of them, could return on another day and gain access to the booth area simply by displaying the remaining tokens in his or her possession.
All of the videotapes displayed in the booths were available for purchase in the remainder of the store premises. Unused tokens could be used as a credit against the purchase price for these videotapes or any other merchandise available for sale in the store. When purchases were made, Sales Tax was collected on the entire purchase price, including any portion paid by the use of tokens. No Sales Tax was collected or paid in connection with the initial sale of the tokens.
Defendant assessed plaintiff for a Sales Tax deficiency of $179,-284.45 for the period January 1990 through March 1995, including interest through April 20, 1997. This assessment was based on defendant’s determination that the sale of tokens was a taxable transaction under N.J.S.A. 54:32B-3(e)(l) which imposes Sales Tax on any “admission charge[ ] in excess of $0.75 to or for the use of any place of amusement” in New Jersey. Defendant contends that the minimum purchase requirement constituted an admission charge “to” a place of amusement, the booth area, and that token purchases constituted payment of an admission charge “for the use of’ a place of amusement, that is, the use of the viewing devices. For the fiscal year ending October 31, 1992, revenues from the yiewing devices totaled $440,268, and purchases of videos totaled $51,829.56. Defendant interprets this data as demonstrating that the viewing devices functioned not as promotional mechanisms to enable patrons to preview videos which they would then purchase, but as sources of amusement or entertainment. Defendant further interprets the data as demonstrat *175 ing that persons using the viewing booths deposited more than three tokens per visit.
Corporation Business Tax
The New Jersey Corporation Business Tax Act, N.J.S.A. 54:10A-1 to -40, imposes an annual franchise tax on every foreign or domestic corporation for the privilege of conducting its business in New Jersey. N.J.S.A. 54J0A-2. The tax is based upon the entire net income of the corporation. N.J.S.A. 54:10A-5(c). “Entire net income” is defined as follows:
"Entire net income” shall mean total net income from all sources, whether within or without the United States, and shall include the gain derived from the employment of capital or labor, or from both combined, as well as profit gain through a sale or conversion of capital assets. For the purpose of this Act, the amount of a taxpayer’s entire net income shall be deemed prima facie to be equal in amount to the taxable income, before net. operating loss deduction and special deductions, which the taxpayer is required to report to the United States Treasury Department for the purpose of computing its federal income tax;. ..
[N.J.S.A. 54:10A-4(k).]
The definition also contains exclusions which are not relevant to this appeal.
The reference in N.J.S.A. 54:10A-4(k) to “federal income tax” incorporates certain provisions of the Internal Revenue Code. Taxable income under the Code consists of gross income minus specified deductions. I.R.C. § 63. Section 162 of the Code defines allowable deductions for trade or business expenses. Those deductions include “a reasonable allowance for salaries or other compensation for personal services actually rendered.” I.R.C. § 162(a)(1) The applicable regulation under § 162 sets forth the following test for deductibility of this allowance: “The test of deductibility in the case of compensation payments is whether they are reasonable and are in fact payments purely for services.” 26 C.F.R. § 1.162-7(a).
As set forth above, the Director determined that a portion of the monies paid to John Mastrolacasa, the principal of the plaintiff, constituted non-deductible distributions of earnings and profits, commonly known as dividends, and not deductible compensation. No reported New Jersey decision has dealt with the issue of how to differentiate between deductible compensation and nonde *176 ductible dividends under the Corporation Business Tax Act. The issue has arisen, however, under the Internal Revenue Code. In light of the specific reference in N.J.S.A. 54:10A-4(k) to the federal income tax, the decisional law under the Internal Revenue Code is relevant to a determination of the standards to be applied in segregating compensation from dividends under the New Jersey Corporation Business Tax Act. Cf. Koch v. Div. of Taxation, 157 N.J. 1, 10-11, 722 A.2d 918 (1999).
In Charles McCandless Tile Service v. United States, 191 Ct.Cl. 108, 422 F.2d 1336 (1970), the Internal Revenue Service determined that a portion of amounts reported by the corporate plaintiff as compensation constituted non-deductible dividends. The two shareholders who received the contested payments owned all or nearly all of the stock of the plaintiff. The court held that “[ejven a payment deemed reasonable ... is not deductible to the extent that it is in reality a distribution of corporate earnings and not compensation for services rendered.” Id. at 1339. The court noted that “close scrutiny” of payments was warranted where a closely-held corporation is the taxpayer. The court’s decision focused on the nonpayment of dividends by the corporation.
The operative facts here reveal ... that as of June 30, 1965, plaintiff had neither declared nor paid dividends to its shareholders in any amount since its formation in 1960. During each of the years in controversy, however, approximately 50 percent of net profits (before salaries and Federal income tax) was paid to the McCandless’ [sic] as compensation. We think it clear that any return on equity capital is so conspicuous by its absence as to indicate, given all the facts, that the purported compensation payments necessarily' contained a distribution of corporate earnings within.
[Id. at 1339-40 (citations omitted).]
Without explanation, the court then concluded that a return on equity capital of 15% of net profits was reasonable and, therefore, that the payments to the shareholders, to the extent of such return on equity, constituted dividends.
The McCandless approach, the so-called “automatic dividend rule”, was rejected in Elliotts, Inc. v. Commissioner, 716 F.2d 1241 (9th Cir.1983). This case involved the deductibility by a corporation of payments made to its employee-chief executive who was also the sole shareholder of the corporation. The court *177 recognized that the test for deductibility is two-pronged: “(1) the amount of the compensation must be reasonable and (2) the payments must in fact be purely for services.” Id. at 1243. With respect to the second prong the court commented as follows:
Proof of the second prong, which requires a “compensatory purpose,” can be difficult to establish because of its subjective nature. The existence of a compensatory purpose can often be inferred if the amount of the compensation is determined to be reasonable under the first prong. Por these reasons, courts generally concentrate on the first prong-whether the amount of the purported compensation is reasonable.
[Id. at 1243 (citations omitted).]
The court then addressed the McCandless decision.
We reject the automatic dividend rule oí’ McCandless for several reasons. First, there is no statute requiring profitable corporations to pay dividends. Congress has chosen to handle abuses in this area through ' '.*• accumulated earnings tax.. Second, the automatic dividend rule is based on the faulty premise that shareholders of a profitable corporation will demand dividends. . If the shareholders prefer to have their return in the form of appreciation rather than dividends, there is nothing in the law precluding the corporation from reinvesting its profits. Third, it may well be in the best interests of the corporation to retain and reinvest its earnings
For these reasons, we will not presume an element of disguised dividend from the bare fact that a profitable corporation does not pay dividends.
In determining the deductibility of compensation payments paid to shareholder-employees, we will continue to concentrate on the reasonableness of those payments. In the rare case where there is evidence that an otherwise reasonable compensation payment contains a disguised dividend, the inquiry may expand into compensatory intent apart from reasonableness. . The inquiry into reasonableness is a broad one and will, in effect, subsume the inquiry into compensatory intent in most cases.
[Id. at 1244-45 (citations omitted).]
The Elliotts court articulated the following factors to be considered in determining whether compensation is reasonable under I.R.C. § 162(a): the employee’s role in the corporation, a comparison of the compensation payment with those paid by similar companies for similar services, the size and complexity of the company’s business, the existence of a relationship between the company and its employee which would permit disguising of nondeductible dividends as salary, and whether internal consistency exists in the corporation’s treatment of payments to employees. Id. at 1245-48.
*178 Elliotts suggests that the analysis of whether compensation is reasonable should be made from the perspective of a hypothetical independent shareholder. The focus of such analysis would be whether the company’s earnings on equity are at a satisfactory level. If not, then, presumably, an independent investor would not approve of the level of compensation sought to be deducted, and some portion of that eómpensation would constitute a disguised distribution of earnings and profits. Id. at 1245. The court remanded the matter to the United States Tax Court, after concluding that “[i]t should not be assumed solely from Elliott’s role as sole shareholder and the absence of dividends that the compensation payments-necessarily contained disguised dividends. These are just two of many factors to be considered.” Id. at 1248-49.
The Elliotts analysis with respect to the factors to be utilized in determining whether payments are compensation or dividends has been widely adopted. See, e.g. Dexsil Corp. v. Commissioner, 147 F.3d 96 (2d Cir.1998); Owensby & Kritikos, Inc. v. Commissioner, 819 F.2d 1315 (5th Cir.1987); Summit Publishing Co., Inc. v. Commissioner, 59 T.C.M. (CCH) 833, 1990 WL 77189 (1990) (specifically adopting the concept that the reasonableness inquiry is a broad one and generally subsumes the compensatory intent inquiry); Mortex Mfg. Co., Inc. v. Commissioner, 67 T.C.M. (CCH) 2412, 1994 WL 87662 (1994) (noting the two-pronged test for compensation and then focusing solely on the first prong, the reasonableness test). The wisdom of the emphasis in Elliotts on the reasonableness of the claimed compensation, and the difficulty inherent in applying the test relating to compensatory intent, are demonstrated by the facts before this court.
Based upon the stipulated facts, and the testimony of Mr. Mastrolacasa and plaintiffs accountant, I find that, in withdrawing money from the corporation, Mr. Mastrolacasa was not thinking in terms of dividend versus compensation, but merely recognized that plaintiff had available cash, and believed that he had earned additional money as a result of his long horn’s of work. Failure to withhold New Jersey Gross Income Tax or federal income tax *179 might, in some circumstances, suggest a distribution of corporate earnings and profits.[1] Here, however, Mr. Mastrolacasa, without consulting his accountant and without any sophisticated understanding of the requirements of the Internal Revenue Code, the New Jersey Gross Income Tax Act or the Corporation Business Tax Act, simply paid himself accumulated cash not needed to pay other corporate obligations.
The determination by defendant that additional Corporation Business Tax payments are due from plaintiff is entitled to a presumption of correctness. Plaintiff bears the initial burden of overcoming this presumption, and, if it does so, it then has the burden of proof that the assessment of taxes was incorrect. Atlantic City Transp. Co. v. Director, Div. of Taxation, 12 N.J. 130, 146, 95 A.2d 895 (1953). I conclude that plaintiff has overcome the presumption of correctness, and has thereby established the existence of genuine issues of material facts which preclude the granting of summary judgment. See R. 4:46-2(c). I further conclude, based on an analysis and weighing of the evidence, that plaintiff has carried its burden of proof to demonstrate that the assessment of Corporation Business Tax was improper.
Defendant does not dispute that the sporadic payments to Mr. Mastrolacasa, when added to the basic salary paid to him, constituted reasonable compensation for his efforts on behalf of plaintiff. This concession, in itself, is sufficient to enable plaintiff to overcome the presumption of correctness, because the concession creates a debatable question as to whether the assessment was correct. See MSGW Real Estate Fund, LLC v. Mountain Lakes Bor., 18 N.J.Tax 95, 98-100 (Tax 1999). As set forth in Elliotts Inc. v. Commissioner, supra, 716 F.2d at 1245, the reasonableness issue in most cases subsumes the inquiry into whether the payments were made with compensatory intent, and a compensatory purpose can be inferred if the disputed payments constitute *180 reasonable compensation. Defendant’s concession as to the reasonableness of Mr. Mastrolacasa’s compensation, when combined with the other undisputed evidence before the court, is sufficient to carry plaintiffs burden of proof.
This other undisputed evidence demonstrates that plaintiff reported the payments in issue as “Officers Compensation” on its New Jersey Corporation Business Tax returns, and that Mi’. Mastrolacasa reported such payments on his personal New Jersey Gross Income Tax returns as “Other Income,” reported them as “Miscellaneous Income” on his personal federal income tax returns, and paid taxes thereon. Both plaintiffs and Mr. Mastrolacasa’s reporting positions are self-serving, and are not by any means determinative of the issue. However, the reporting positions are consistent with defendant’s concession as to reasonableness.
Defendant cites the failure to withhold, absence of a corporate resolution or corporate minutes authorizing or memorializing the payments, the irregular timing of the payments, and Mr. Mastrolacasa’s failure to report the payments as “Salary and Wages” on his personal tax returns, as demonstrating that the payments were made other than with compensatory intent. Plaintiffs failure to adopt corporate resolutions or prepare appropriate corporate minutes provides no support for defendant’s position, because the absence of resolutions and minutes could also be construed as indicating that no dividend was paid. Plaintiffs failure to withhold taxes is also insufficient to overcome the probative impact of the acknowledged reasonableness of payments as compensation. In Bruce v. Commissioner, 45 T.C.M. (CCH) 916, 1983 WL 14104 (1983), the United States Tax Court stated as follows:
Several cases decided by this court have dealt with the issue as to whether payments, claimed to constitute compensation, are in fact purely for services rendered or are in whole or in part made for personal, rather than business, reasons. These cases establish that the question is purely one of fact, and no one circumstance controls the ultimate resolution of the issue. Specifically, the taxpayer’s failure to withhold, pay social security tax, and meet filing and reporting requirements imposed upon .employers by the Internal Revenue Code is not determinative as to the question of whether payments in fact constitute compensation, although these are relevant factors to consider.
*181 [Id. at 919 (citations omitted).]
Finally, the designation of the contested payments as “Other Income” or “Miscellaneous Income” and not as “Salary and Wages” on Mr. Mastrolacasa’s personal income tax returns does not support defendant’s position. Mr. Mastrolacasa could have reported the payments as “Dividends”, but did not do so.
The personal federal income tax returns (Form 1040) filed by Mr. Mastrolacasa reflect that, for four of the five years in question (his tax return for 1989 is not in the record), he reported small dividend payments from plaintiff. For the calendar year 1998 the dividend amount was $1,198, for 1990 the dividend amount was $1,031, for 1991 the dividend amount was $835 and, for 1992 the dividend amount was $738. These payments were minimal as compared to Mr. Mastrolacasa’s total compensation, but, as set forth in Elliotts, there is no requirement that a corporation pay dividends. Consequently, when a corporation is paying reasonable compensation to its principal employee, the payment of minimal dividends does not suggest that a portion of the compensation for any year should be treated as a dividend. Indeed, the payment of any dividend supports the deductibility by plaintiff of the amounts reported as compensation paid to Mr. Mastrolacasa.
Based on the preceding analysis, I conclude that the disputed payments by plaintiff to Mr. Mastrolacasa constituted deductible compensation and not dividends.
Sales Tax
The assessment by defendant for Sales Tax was based upon the provisions of N.J.S.A 54:32B-3(e)(1) under which a tax of six percent is imposed upon “[a]ny admission charge, where such admission charge is in excess of $0.75 to or for the use of any place of amusement in the State ...”
An “admission charge” is defined in N.J.S.A. 54:32B-2(o) as “[t]he amount paid for admission, including any service charge and any charge for entertainment or amusement or for the use of facilities therefor.” A “place of amusement” is defined in N.J.S.A. *182 54:32B-2(t) as “[a]ny place where any facilities for entertainment, amusement, or sports are provided.” In Mariner’s Landing, Inc. v. Director, Div. of Taxation, 11 N.J.Tax 215 (Tax 1989), Judge Rimm concluded, after examining dictionary definitions of the words “facility” “place” and “amusement,” that “a tax on ‘admission’ to a ‘place of amusement’ is a tax levied on a charge for entering, a space devoted to or providing something that amuses or for the use of facilities that amuse or entertain." Id. at 220.
Here, plaintiff required certain patrons of its business to purchase a minimum of $3 of tokens in order to enter the segregated portion of its store containing booths in Which videotapes could be viewed. Patrons could also purchase additional tokens. Defendant contends that all token purchases constituted payments of admission charges for entry to the segregated booth area or for the use of the viewing devices. Plaintiff contends that neither the segregated area nor an individual viewing device is a “place of amusement,” and that neither any required purchase of tokens nor any other purchase constitutes payment of an “admission charge.”
In determining whether the booth area, or an individual viewing device, constitutes a “place of amusement,” and whether the token purchases constitute payments of admission charges subject to Sales Tax, the court must be cognizant of the presumption in favor of the correctness of the assessment imposed by defendant, H.J. Bradley, Inc. v. Director, Div., of Taxation, 4 N.J.Tax 213, 229 (Tax 1982), and cognizant of the provisions of N.J.S.A. 54:32B-12(b) which, in relevant part, state as follows:
For the purpose of the proper administration of this act and to prevent evasion of the tax hereby imposed, it shall be presumed that ... all amusement charges of any type mentioned in subsection (e) of [N.J.S.A. 54:32B-3] are subject to tax until the contrary is established, and the burden of proving that any such ... amusement charge .. is not taxable hereunder shall be upon the person required to collect tax or the customer.
The term “amusement charge” is defined in N.J.S.A. 54:32B-2(p) as including “[a]ny admission charge.”
In Manner’s Landing, Judge Rimm discussed certain decisions of the New York courts which suggested a result different from the one he reached. In that discussion, he noted the *183 derivation of the New Jersey Sales Tax statutes from the New York statutes, see New Jersey Bell Telephone v. Director, Div. of Taxation, 152 N.J.Super. 442, 450, 378 A.2d 38 (App.Div.1977) (Horn, J., concurring), certif. denied, 75 N.J. 594, 384 A.2d 824 (1978), and noted that, notwithstanding the relationship between the New Jersey and New York statutes, decisions of the New York courts are not controlling in interpreting the New Jersey statutes. United States Casualty Co. v.. Hercules Powder Co., 4 N.J. 157, 168, 72 A.2d 190 (1950); In re Summit & Elizabeth Trust Co. 111 N.J.Super. 154, 166, 268 A.2d 21 (App.Div.1970). I concur with Judge Rimm’s description of the significance and role of out-of-state decisions in interpreting New Jersey statutes. I include the following discussion of decisions by the courts of New York and Maryland not because they are in any sense binding on me, but because of the paucity of New Jersey decisional law and because those decisions provide some guidance in interpreting the New Jersey Sales Tax statutes and in applying those statutes to the facts before me.
In Bathrick Enterprises, Inc. v. Murphy, 50 Misc.2d 14, 269 N.Y.S.2d 305 (Sup.Ct.1966), rev’d on other grounds, 27 A.D.2d 215, 277 N.Y.S.2d 869 (1967), aff’d, 23 N.Y.2d 664, 295 N.Y.S.2d 489, 242 N.E.2d 745 (1968), a decision discussed in Manner’s Landing, the New York Supreme Court held that receipts from coin-operated amusement devices, such as phonographs, bowling games, and pool tables, were not subject to sales tax under § 1105(f)(1) of the New York Tax Law (McKinney). This statute provided, in relevant part, for the imposition of a sales tax upon “[a]ny admission charge where such admission charge is in excess of ten cents to or for the use of any place of amusement in the state....” The court reasoned that, even though the devices were facilities for amusement or entertainment, the devices did not constitute places of amusement. As a result, receipts from the devices did not constitute admission charges “to or for the use of [a] place of amusement.” Bathrick, supra 269 N.Y.S.2d at 308.
In Outdoor Amusement Business Ass’n. v. State Tax Commission, 57 N.Y.2d 790, 455 N.Y.S.2d 586, 441 N.E.2d 1104 (1982), *184 another decision discussed in Mariner’s Landing, the New York Court of Appeals held, under § 1105(f)(1) of the New York Tax Law, that charges imposed for carnival games conducted in-booths, stalls, and trailers were not admission charges, but were charges paid in order to participate in the games and have a chance of whining a prize.
The New York courts addressed the issue of coin-operated amusement devices in another context in 1605 Book Center, Inc. v. Tax Appeals Tribunal of New York, 83 N.Y.2d 240, 609 N.Y.S.2d 144, 631 N.E.2d 86 (1994), cert. denied, 513 U.S. 811, 115 S.Ct. 61, 130 L.Ed.2d 19 (1994), where the Court of Appeals affirmed a determination by the Appellate Division of the Supreme Court that receipts from live peep shows and fantasy booths constituted admission charges to a place of amusement under § 1105(f)(1) of the Tax Law. Each booth contained a coin-operated device, and, upon deposit of a coin, a screen would be lifted. A patron in a peep show booth could view, for a limited period of time, a live performance. In a fantasy booth, a patron could speak, for a limited period of time, with a partially nude woman. The court distinguished these booths from booths containing coin-operated movie viewing devices. As described in a concurring opinion in the Appellate Division which was adopted by the Court of Appeals, the distinction is as follows:
In the case of the viewing of a movie in one of petitioner’s booths, the patron deposited a coin or token in a slot which activated a mechanical movie-showing device. On the other hand, with respect to the other two forms of entertainment offered from the booths, the patron deposited a coin or token in a slot activating a device to raise a screen or curtain enabling the patron to watch (or participate in) a live performance.
Thus, the charges for activating the mechanical movie-showing- device in the booths at petitioner’s establishment shared a salient (and dispositive) feature with the coin-operated music-playing devices held not subject to the admissions charge sales tax in Bathrick Enterprises v. Murphy...... As described above, however, this feature was absent in the case of the charges with respect to the live performances accessible from the booths.
[1605 Book Ctr., Inc. v. Tax Appeals Tribunal of New York, 188 A.D.2d 694, 590 N.Y.S.2d 591, 593 (1992).]
The Court of Appeals, in addition to adopting the Appellate Division’s distinction between coin-operated movie devices and *185 coin-operated access to live peep shows and fantasy interactions, commented as follows:
It is also dear that the live peep shows differ from mechanical “devices for amusement” in that the entertainment places at issue here involve the viewing and interacting with a live performer, which presents a spontaneous, human feature not found in coin operated electronic solo entertainment devices. In essence, these commercial transactions reflect the collection of an admission charge for paying customers to be amused by live sex shows and “fantasy” experiences. To treat the charge as one imposed for the use of a “device for amusement,” as appellant suggests would contradict the core reality of these human exchanges and taxable transactions (contrast Bathrick Enterprises v. Murphy .. ).
(1605 Book Ctr., Inc. v. Tax Appeals Tribunal of New York, supra, 609 N.Y.S.2d 144, 631 N.E.2d at 89-90.]
The obvious implication of the 1605 Book Center, Inc. decision is that charges paid for the operation of coin-operated movie viewing machinery would not constitute taxable admission charges for the use of a place of amusement.
A Maryland court came to a somewhat different conclusion in 318 North Market Street, Inc. v. Comptroller of the Treasury, 78 Md.App. 589, 554 A.2d 453 (1989). There, the taxpayer challenged the rate of tax applicable to receipts from coin-operated viewing booths. As described by the court, each booth was furnished with a bench, equipment for viewing adult films (peep shows), and a coin box. Each booth had available a number of film selections. No charge was imposed to enter the taxpayer’s store, the booth area, or the booths, but, in order to view a film, a patron would have to deposit $0.25 in the coin box. By statute, the State of Maryland authorized municipalities to impose gross receipts taxes on certain activities. The City of Frederick imposed a tax at the rate of ten percent on receipts from the “use of sporting or recreational facilities or equipment,” but reduced the rate to five percent on receipts received from “admission to motion picture theaters, movie house, outdoor theater or other similar activity.” Id. at 455. The taxpayer contended that the booths constituted motion picture theaters or a similar activity. The court held that the peep show booths constituted “recreational facilities or equipment,” and defined recreation as “a means of getting diversion or entertainment.” Id. at 457. (Citations omitted).
*186 Based on my analysis of the applicable New Jersey Sales Tax statutes and the interpretation of those statutes in Mariner’s Landing, Inc. v. Director, Div. of Taxation, supra, 11 N.J.Tax 215, and after considering the foregoing New York and Maryland decisions, I conclude that the booth area in plaintiffs store constitutes a “place of amusement” within the meaning of N.J.S.A . 54:32B-3(e)(1) and N.J.S.A 54:32B-2(t). The area is physically separated from the remainder of the store premises. Entry into the area is controlled by an attendant. Within the area are facilities, the viewing booths, which provide entertainment and amusement for customers. The booths also provide an opportunity for patrons to examine small segments of videotapes which they may later purchase, but this is only an incidental function. During the fiscal year ending October 31, 1992, plaintiffs receipts from the booths were nearly eight times its receipts from purchases of videotapes, and the tokens collected from the booths constituted the largest category of income for the store premises.
I further conclude that the minimum token purchase requirement for admission to the booth area constitutes an “admission charge to or for the use of a place of amusement” within the meaning of N.J.S.A. 54:82B-3(e). I recognize that not all patrons are subject to the requirement, and that the tokens purchased may be utilized elsewhere in the store premises to purchase merchandise. Nevertheless, in order to obtain admission to the booth area, some patrons must purchase at least $3 of tokens. To the extent, therefore, that patrons were required to purchase such amount of tokens, the required purchase constituted an admission charge subject to Sales Tax. If any such tokens were used to purchase merchandise on which plaintiff collected and remitted Sales Tax, duplicate taxation could be avoided by the maintenance of records identifying purchases made with tokens. Failure by plaintiff to maintain such records, and the resulting likelihood of some duplicate taxation, is not a reason to interpret the law differently.
My conclusion as to the taxability of receipts from plaintiffs minimum token purchase requirement is not inconsistent with the *187 New York and Maryland decisions discussed above. Those decisions relate to receipts consisting of the monetary value of tokens deposited in viewing devices. The receipts which I hold to be taxable, that is, receipts from the minimum token purchase required to enter plaintiffs booth area, are different in kind from receipts consisting of, or measured by, deposits in viewing devices.
Based on the preceding analysis, I conclude that no genuine issues as to any material fact exists, and defendant is entitled to summary judgment as a matter of law, as to plaintiffs liability for Sales Tax measured by receipts from tokens purchased to satisfy plaintiffs minimum purchase requirement. The amount of tax due must be determined. As a result, I grant defendant’s motion for summary judgment as to liability, but denjf the motion as to the amount of tax due from purchases of tokens made to satisfy plaintiffs minimum purchase requirement.
Defendant has asserted, as an additional basis for the assessment in dispute, that each of the devices in plaintiffs store constituted a place of amusement, and that tokens deposited in the devices constituted admission charges for the use of a place of amusement. This contention would subject all viewing devices receipts to Sales Tax, whether or not consisting of tokens purchased to satisfy the minimum purchase requirement. I reject, as a matter of law, defendant’s contentions as to these additional token receipts, and, consequently deny defendant’s motion for summary judgment as to these receipts.
My determination above that the segregated booth area in plaintiffs store constitutes a place of amusement under N.J.S.A. 54:32B—3(e)(1) incorporates my determination that the viewing devices provide amusement or entertainment to patrons. However, the devices are not, in themselves, places of amusement. I concur with the reasoning of the New York court in Bathrick Enterprises, Inc. v. Murphy, supra, 50 Misc.2d 14, 269 N.Y.S.2d 305, in distinguishing between a “place of amusement” and the device providing the amusement. Consequently, because plaintiffs viewing devices are not places of amusement, receipts from the devices are not, as such, subject to Sales Tax. In addition, the *188 tokens deposited in the viewing devices are not “admission charges.” The deposit of a token is not required to enter a booth, only to operate a viewing device. The token deposits, therefore, are directly analogous to the payment of charges for carnival games which the New York Court of Appeals characterized as payments made to play the games not to gain admission to the carnival booths or stalls. Outdoor Amusement Bus. Ass’n. v. State Tax Comm’n., supra, 57 N.Y.2d 790, 455 N.Y.S.2d 586, 441 N.E.2d 1104.
Even if I concluded that the viewing devices were places of amusement and that the token deposits constituted payments of admission charges, I would reject defendant’s contentions because the admission charge does not exceed $0.75, the minimum amount set forth in N.J.S.A. 54:32B-3(e)(1) in order for the charge to be taxable. The payment for each use of a viewing device in plaintiffs premises was $0.25, the value of one token. Multiple tokens could not be deposited. Each token had to be deposited singly, and each deposit permitted the patron to view approximately one minute of a videotape. Defendant’s argument, that the distribution of plaintiffs receipts for the fiscal year ending October 31, 1992 demonstrates that natrons regularly deposited more than three tokens, may be supportable by an inference from the records on which defendant relies, but the facts that the viewing devices accepted only one token at a time, and, after one minute, stopped until another token was deposited, preclude treating successive token deposits cumulatively.
The facts here are analogous to those in Mariner’s Landing, Inc. v. Director, Div. of Taxation, supra, 11 N.J.Tax 215. That case involved various amusement rides located on a pier. Each ride required a different number of tickets for entry. After concluding that each ride was a place of amusement and that the cost of the tickets required for entry into a ride constituted an admission charge, Judge Rimm directed that a trial be conducted to determine the portion of the taxpayer’s receipts resulting from the use of tickets representing $0.75 or less. Those receipts would not be subject to Sales Tax. The logical extension of this ruling is *189 that, if the number of tickets for a ride represented a charge of less than $0.75, a patron’s remaining for a successive ride would not allow the cumulation of the charges. For example, if a patron used tickets having a value of $.50 lor a one minute ride on a merry-go-round, and then, when the ride ended, remained on the merry-go-round and produced two more tickets equaling $.50 for another one minute ride, the admission charge for each ride would be $.50 and not $1.00. The same principle applies to the deposit of one token at a time in the viewing devices in plaintiff’s premises.
In summary, I conclude that the segregated area where video booths are located in plaintiffs store premises constituted a place of amusement, and that the $3 minimum purchase of tokens required for access to the area constituted an admission charge to or for the use of a place of amusement, whether or not the charge was imposed on all patrons and whether or not the tokens purchased could be used elsewhere in the store as payment for merchandise. In addition, I conclude that no Sales Tax is collectable based on the receipts from the viewing devices themselves, because, (1) each device was not a place of amusement, (2) deposits of tokens in the devices did not constitute payments of admission charges, and (3) even if each device constituted a place of amusement and the deposit of tokens constituted payment of an admission charge, the admission charge was the value of one token, $0.25, an amount less than the statutory minimum for imposition of Sales Tax.
Based upon the foregoing, judgment will be entered in favor of plaintiff and against defendant with respect to the claim for additional Corporation Business Tax. With respect to the claim for Sales Tax, entry of judgment will be deferred pending determination of the amount of tax due. If the parties are unable to agree as to such amount due within thirty days from the date of this opinion, a trial will be scheduled to resolve this issue.

 No issue has been presented in this matter under N.J.S.A. 54A:7-1 to -7, the applicable provisions of New Jersey Gross Income Tax Act, with respect to plaintiff's failure to withhold taxes.