In the Matter of LAWRENCE A. WIEN et al., Individually and as Joint Venturers Associated under the Name of EMPIRE STATE BUILDING COMPANY, Petitioners, *v.* JOSEPH H. MURPHY et al., Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, November 6, 1967.

*Wien, Lane, Klein & Malkin* (*Ralph W. Felstein* of counsel), for petitioners.

*Louis J. Lefkowitz, Attorney-General* (*Robert W. Bush* and *Ruth Kessler Toch* of counsel), for respondent.

GABRIELLI, J. This is a proceeding under article 78 of the CPLR (transferred to the Appellate Division of the Supreme Court in the Third Judicial Department by an order of the Supreme Court at Special Term, entered in Albany County) to review and annul the determination of respondents, constituting the State Tax Commission, which sustained the imposition of a sales tax on admission charges to the Empire State Building Observatory.

The Empire State Building Company is a joint venture organized by the petitioners who operate and are the landlords of the building widely known as the Empire State Building which is 102 stories high and is located in New York City. The company also operates the Empire State Building Observatory located on the 86th and 102d floors of the Empire State Building. The area comprising the observatory on these floors is provided by the petitioners for the observation of the New York skyline and a panoramic view of the surrounding metropolitan area and countryside; and people desiring to enjoy the use of and be admitted to the observatory are required to pay an admission charge prior to taking special elevators to the observatory.

In 1966, petitioners paid to the State Tax Commission $128,995.62, under protest, which represented the State and local sales tax on admissions to the observatory for the period between August 1, 1965 and August 31, 1966. It is urged by the petitioners that the commission has wrongly interpreted and applied the Tax Law in that the observatory does not constitute a facility or place upon which the State may levy a sales

tax on admission charges therefor; and, specifically, that the observatory is neither a place of amusement nor a facility which permits or provides amusement or entertainment.

The statutes defining the taxability questioned by petitioners are section 1105 of the Tax Law, which imposes a 2% tax upon any admission charge (in excess of 10 cents) to certain specified places of amusement, and section 1101 of the Tax Law which defines a place of amusement. In addition to the sales tax levied by the State, the City of New York has imposed a 3% sales tax pursuant to Local Law No. 73, 1965 (Administrative Code of City of New York, § A46-1.0 *et seq.*), upon the admission charges under language identical with that contained in these sections of the Tax Law.

Section 1105 of the Tax Law provides in pertinent part that:

" On and after August first, nineteen hundred sixty-five, there is hereby imposed and there shall be paid a tax of two percent upon: * * *

" (f) (1) Any admission charge where such admission charge is in excess of ten cents to or for the use of any place of amusement in the state ". (With certain exceptions which are concededly not here applicable.)

And section 1101 of the Tax Law, which confines itself to definitions, provides:

" (d) * * * (2) Admission charge. The amount paid for admission, including any service charge and any charge for entertainment or amusement or for the use of facilities therefor. * * *

" (10) Place of amusement. Any place where any facilities for entertainment, amusement, or sports are provided."

The basic issue presented is whether State and local sales taxes on admission charges may be imposed on admission to the Empire State Building Observatory as a " place of amusement "; and critical to the determination of this question is the statutory construction and intent of the definition of " Place of amusement " in paragraph (10) of subdivision (d) of section 1101 of the Tax Law.

The observatory is open to anyone who pays the appropriate admission charge. Patrons enter a special entrance on the ground floor and are taken directly to the first observatory area on the 86th floor consisting of an outdoor terrace completely encircling the building and from which there is a 50-mile view which encompasses the States of New York, New Jersey, Pennsylvania, Massachusetts and Connecticut. Available also are coin-operated binoculars, souvenir counters, a voice recording machine and a color photo studio where a patron can be photo-

graphed. A separate elevator from the 86th floor is used to the 102d floor where a similar observatory area is enclosed and is used to view a larger panoramic scene.

Petitioners lay stress on the contention that the facilities afforded by the observatory do not provide any amusement within the meaning and intent of the definition thereof in paragraph (10) of subdivision (d) of section 1101 of the Tax Law, or within the ordinary or normal meaning of the word "amusement", and additionally urge that in fact the facilities afforded are but educational and edifying in character and no one is entertained. We must, therefore, look to the legislative intent as well as the common and accepted meaning of the words used.

Before proceeding with the examination of this question, we would here point out that if in fact a place or facility provides something edifying or educational in addition to enjoyment, entertainment or amusement, it is no less a place of amusement.

In explaining the words "amusement" and "entertainment" in various ways, Webster's New Twentieth Century Dictionary (2d ed.), also defines "amusement" as "(2) the act of amusing; diversion, recreation; the state of being amused", while Black's Law Dictionary (4th ed.) defines "AMUSEMENT. Pastime; diversion; enjoyment. A pleasureable occupation of the senses, or that which furnishes it". Clearly then, the observatory well and adequately fits the common and accepted meanings of these terms used in the statute, which defines a "Place of amusement" as "any place where facilities for entertainment, amusement or sports are provided" (Tax Law, § 1101, subd. [d], par. [10]); and the operation of the observatory when viewed in its entirety leads to but one conclusion that it is a place of amusement within the meaning and intent of the Tax Law. Accepting the various definitions of "places of amusement" as urged by petitioners, they clearly apply to the observatory which is commercially exploited through admission charges for the very reason contemplated by the definition of amusement, and which is clear indicia of taxability.

While we recognize that tax statutes are to be strictly construed in favor of the taxpayer (*Matter of American Cyanamid & Chem. Corp.* v. *Joseph,* 308 N. Y. 259; *Bathrick Enterprises* v. *Murphy,* 27 A D 2d 215), the application of this doctrine cannot serve to defeat the purpose of the statute where there exists clear and unmistakable meaning and intent in the act itself. Here, nothing is left to conjecture nor can any claim of vagueness or indefiniteness be sustained. As a complement to the rule of strict construction, the principle that a tax statute should be interpreted as the ordinary person reading it would interpret

it,. should prevail (*Matter of Business Statistics Organization* v. *Joseph,* 299 N. Y. 443), and since the words used in the statutory definition of a '' Place of amusement '' are common words, they, are to be given their commonly understood meanings unless another meaning is obviously intended (*Matter of Steinbeck* v. *Gerosa,* 4 N Y 2d 302). There is nothing here to suggest that any special or unique meaning must be applied.

In sum, not only does the statute clearly define the phrase '' Place of amusement '' with a standard by which applicability may be determined, but the words used therein are commonly understood with well-established meanings.

Petitioners would also have us make a hard distinction betweeen the words '' place '' and '' facilities '' as used in the section (Tax Law, § 1101, subd. [d], par. [10]); and while admitting that an observatory is a '' place '', strongly urge that no '' facilities '' are afforded for the *enjoyment* of any patron. In so doing they assume a narrow and restricted meaning of the latter word which we cannot adopt. The construction and lay-out of each of the areas constituting the observatory lend themselves to but one conclusion; that they are facilities within the meaning of the statute. Webster's Third New International Dictionary (1961) defines a '' facility '' as '' something that promotes the ease of any action, operation, transaction, or course of conduct '' or something '' that is built, constructed, installed, or established to perform some particular function or to serve or facilitate some particular end ''. The very description of the observatory areas more than adequately fits the definitions in their commonly accepted terms; and we would here point out that a tax is imposed on an admission charge for '' amusement or *for the use of facilities therefor* '' (emphasis supplied).

An examination of the exhibits attached to the pleadings clearly shows that the petitioners issued quantities of promotional material to attract people to use the facilities afforded by the observatory and that this material was specifically designed to appeal to the ticket purchaser's desire for entertainment, diversion, recreation and amusement. To mention but two of these, we observe that petitioners invite people to purchase admission tickets to '' Thrill to the Glittering Excitement of New York at Night '' and that the observatory is characterized as offering '' The World's Most Spectacular View ''.

One further observation need be made. Petitioners lay stress on an exemption given them by a ruling of the Comptroller of the City of New York under a former repealed provision of

the Administrative Code of the City of New York (§§ G46–2.0, G46–1.0) which provided for the imposition of a tax on such admissions. Whatever may have been the position then taken by the City Comptroller can be of no concern to us upon the issue here presented under the statutes now before this court. When the State enacted the statutes under consideration, the city (pursuant to article 29 of the Tax Law) promptly repealed the former provision and adopted new provisions of its Administrative Code worded identically with the provisions of sections 1101 and 1105 of the Tax Law. Additionally dispositive of this contention by petitioners is the fact that the legislative definition of " place of amusement " under the new local law adopted by the city, differs from the definition in the repealed law and speaks in broader and more general terms, consistent with the view adopted by us regarding the State statutes under consideration.

We conclude that the facility afforded by the observatory was a place of amusement and that the imposition of the tax on the sale of admission tickets was validly made under an unmistaken and clear legislative mandate, and the determination of the State Tax Commission should be confirmed.

The determination should be confirmed, with costs.

GIBSON, P. J., REYNOLDS, AULISI and STALEY, JR., JJ., concur.

Determination confirmed, with costs.