■ In the Matter of 1605 BOOK CENTER, INC., Petitioner, v TAX APPEALS TRIBUNAL OF THE STATE OF NEW YORK et al., Respondents.—Harvey, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which sustained a sales and use tax assessment imposed under Tax Law articles 28 and 29.

In 1980 the Audit Division of the Department of Taxation

and Finance determined that petitioner, a purveyor of various forms of adult entertainment in the Times Square area of New York City, owed $141,686.11 in sales and use taxes plus interest for the period between March 1, 1976 through August 31, 1979. Included among the assessments were claims for sales taxes on two types of live peep shows operated by petitioner. One of these, called "live peep shows", involved a coin-operated device, contained within a private booth, which allowed the patron to view from behind a glass partition a nude or partially nude woman perform a dance. The other applicable entertainment, called a "fantasy booth", also involved a coin-operated private booth and this allowed a patron to have a conversation with a woman dressed in abbreviated attire located on the opposite side of the glass partition.* Petitioner challenged the Audit Division's adverse assessment determination and a hearing before an Administrative Law Judge (hereinafter ALJ) was ultimately held. The ALJ partially granted the petition but, as pertinent to this proceeding, found that revenue from the live peep shows and fantasy booths were subject to sales and use taxes.

Both petitioner and respondent Commissioner of Taxation and Finance filed a notice of exception to the ALJ's determination with respondent Tax Appeals Tribunal. After argument, the Tribunal denied the exceptions of petitioner and respondent and upheld the ALJ's determination in its entirety. The Tribunal found that revenues from live peep shows and fantasy booths were subject to sales tax because "patrons entered a physical place, the booth, and paid a fee which provided them with a private space from which to watch the peep show. In short, each patron paid an admission charge to a place of amusement" (see, Tax Law § 1101 [d] [2], [10]; § 1105 [f] [1]). Petitioner thereafter commenced this CPLR article 78 proceeding in this Court seeking review of the Tribunal's determination.

We confirm. Petitioner, citing the language of Tax Law § 1105 (f) (1) and various cases, argues that because jukeboxes,

---

* As gleaned from the hearing testimony and the parties' stipulation, the live peep shows and fantasy booth worked as follows. The patron entered a booth, for which no fee was paid, and a coin was inserted into a machine. A screen then lifted exhibiting a glass partition behind which nude or partially clad women performed on a stage, which was surrounded by the booths. The women paid more attention to those booths where the curtains were lifted. In the fantasy booth, the patron could speak to a woman via an intercom system. Patrons could not remain in the booth if coins were not inserted in the machine, and a light went on outside the booths when they were being used by patrons.

video games and other coin-operated amusement devices have been found to be outside the scope of the Tax Law *(see, e.g., Matter of Hospital Tel. Sys. v New York State Tax Commn.,* 44 AD2d 271, *affd* 36 NY2d 746; *Bathrick Enters. v Murphy,* 27 AD2d 215, *affd* 23 NY2d 664), live peep shows and fantasy booths, which are allegedly similar to these devices, should also be found not subject to the sales tax. According to petitioner, no meaningful distinction exists between live peep shows and movie peep shows, which respondent stipulated are not taxable. We cannot agree with these contentions.

Tax Law § 1105 (f) (1) mandates that a tax be collected on an "admission charge * * * for the use of any place of amusement". An admission charge is defined as an "amount paid for admission, including any service charge and any charge for entertainment or amusement or for the use of facilities therefor" (Tax Law § 1101 [d] [2]). A place of amusement is defined as "[a]ny place where any facilities for entertainment, amusement, or sports are provided" (Tax Law § 1101 [d] [10]). Here, each booth relevant in this case "was a physical place which could be entered to watch a show for amusement". Therefore, the Tribunal properly held that revenues from live peep shows and fantasy booths are "admission charge[s]" to a "place of amusement" (Tax Law § 1105 [f] [1]; *see, Fairland Amusements v State Tax Commn.,* 110 AD2d 952, 954 [Mikoll, J., dissenting], *revd* 66 NY2d 932).

The booths involved here employing live female entertainment were clearly distinguishable from coin-operated jukeboxes, bowling games and other mechanical devices located in restaurants, taverns and other similar places. While petitioner is correct in noting that both movie peep shows and the live shows at issue here both require booth users to deposit coins that set in motion a mechanical apparatus which raises a screen to permit the entertainment, in the live shows the entertainment itself does not consist of the mechanical device which is set in motion by the coins. Instead, the entertainment consists of the performance by an entertainer viewed by one or more patrons in a shared entertainment space. Although patrons do not pay a fee to enter the booths themselves, they access live entertainment by inserting a coin into a machine. The booths afford privacy but are part of the amusement facility itself, which also consists of a stage and live performers. As a result, when the live peep shows are considered in all their aspects, the only conclusion to be drawn is that the live peep shows and fantasy booth shows are places of amusement under the Tax Law *(see, Matter of Wien*

*v Murphy,* 28 AD2d 222, 225, *lv denied* 22 NY2d 646) and the charges for their use are essentially a fee for use of petitioner's entertainment facilities *(see, Outdoor Amusement Bus. Assn. v State Tax Commn.,* 84 AD2d 950, 952, *revd on dissenting mem below* 57 NY2d 790).

Petitioner's remaining arguments have been considered and rejected. Despite petitioner's contentions otherwise, the hearsay and conclusory evidence offered by petitioner is insufficient to make out a prima facie showing that petitioner was a victim of selective enforcement by respondents and, therefore, no hearing is required *(see, Matter of Feigman v Klepak,* 62 AD2d 816, 819).

Mercure, Mahoney and Casey, JJ., concur.

Levine, J. P. (concurring). I concur in the resolution of the issues discussed in the majority's decision. I wish to address briefly, however, the additional issue of whether the determination of the Tax Appeals Tribunal is objectionable, under *Matter of Field Delivery Serv. (Roberts)* (66 NY2d 516), as an inconsistent treatment of essentially the same transactions, in not imposing an admission charge sales tax on petitioner's charges for viewing movies in its booths, while at the same time assessing that tax on the charges for viewing nude dancing, or viewing or speaking to a partially nude woman from the same or similar booths. In the case of the viewing of a movie in one of petitioner's booths, the patron deposited a coin or token in a slot which activated a mechanical movie-showing device. On the other hand, with respect to the other two forms of entertainment offered from the booths, the patron deposited a coin or token in a slot activating a device to raise a screen or curtain enabling the patron to watch (or participate in) a live performance.

Thus, the charges for activating the mechanical movie-showing device in the booths at petitioner's establishment shared a salient (and dispositive) feature with the coin-operated music-playing devices held not subject to the admissions charge sales tax in *Bathrick Enters. v Murphy* (27 AD2d 215, *affd* 23 NY2d 664). As described above, however, this feature was absent in the case of the charges with respect to the live performances accessible from the booths. Because this distinction affords a rational basis for the differential treatment of the charges in connection with the live performances at petitioner's establishment, I find no violation of the rule enunciated in *Matter of Field Delivery Serv. (Roberts) (supra).* I therefore join in confirming the Tribunal's determination.

Adjudged that the determination is confirmed, without costs, and petition dismissed.