OPINION OF THE COURT
 

 Bellacosa, J.
 

 Article 28 of the Tax Law requires a sales tax to be paid on "[a]ny admission charge” for use of "any place of amusement”. The issue is whether Tax Law § 1105 (f) (1) permits the State taxing authority to collect a sales tax on receipts derived from patrons depositing coins in peep show booths to view or converse with live entertainers. We granted leave to appeal and agree with the Appellate Division that the gross receipts for admission to this place of amusement are taxable.
 

 During the tax period at issue, appellant 1605 Book Center, Inc., conducted a business in New York City’s Times Square area. It sold sexually oriented books and magazines, operated a motion picture theater, and provided live peep show booths on its premises for patrons to enter and activate by the deposit of a coin.
 

 In July 1980, following an audit, the State Division of Taxation issued a notice of determination and demand for payment of sales and use taxes due for the period March 1, 1976 through August 31, 1979, assessing tax due of $141,686.11 plus interest. The audit report indicated that four categories of sales were included in the audit, including those
 
 *243
 
 for sales taxes on two types of live peep shows. The first included those available by coin-operated machines, in private booths that surrounded a stage on which nude or partially nude females performed. The other venue, known as the "fantasy booth,” also functioned with a coin deposited in a private booth, allowing a patron to converse with a scantily dressed woman. In both booths, the patron was separated from the performer by a glass partition which was covered by a curtain or screen. The curtain parted for a set time only after the patron deposited a coin into the machine.
 

 Petitioner challenged the tax assessment. Following a hearing, an Administrative Law Judge granted the petition in part, but, as pertinent to this proceeding, found that revenues derived from the live peep shows and fantasy booths were subject to sales and use taxes under Tax Law § 1105 (f) (1). On appeal, the Tax Appeals Tribunal denied appellant’s exemption relating to the imposition of a sales tax on live peep shows, affirmed the Administrative Law Judge’s modification of the original notice of determination, and rejected appellant’s claim that it had been subjected to selective enforcement.
 

 Petitioner commenced this CPLR article 78 proceeding to annul the determination, asserting that this case represents an unwarranted extension of Tax Law § 1105 (f) (1). The Appellate Division confirmed the determination and dismissed the petition
 
 (Matter of 1605 Book Ctr. v Tax Appeals Tribunal,
 
 188 AD2d 694). We now affirm.
 

 Tax Law § 1105 (f) (1) provides, in pertinent part, that a sales tax should apply to
 
 "fajny admission charge
 
 where such admission charge is in excess of ten cents to or
 
 for the use of any place of amusement
 
 in the state” (emphasis added). Section 1105 (f) (1) specifically excludes from the sales tax, admission charges
 

 "to race tracks, boxing, sparring or wrestling matches or exhibitions which charges are taxed under any other law of this state, or dramatic or musical arts performances, or motion picture theaters, and except charges to a patron for admission to, or use of, facilities for sporting activities in which such patron is to be a participant, such as bowling alleys and swimming pools.”
 

 The term "place of amusement” is defined by Tax Law § 1101 (d) (10) as "[a]ny place where any facilities for entertainment,
 
 *244
 
 amusement, or sports are provided”, which includes without limitation a "theatre of any kind, concert hall, opera house, or other place where a performance is given” (20 NYCRR 527.10 [b] [3] [i]). The term "admission charge” is defined in Tax Law § 1101 (d) (2) as "[t]he amount paid for admission, including any service charge and any charge for entertainment or amusement or for the use of facilities therefor”. Appellant insists that the booths are not places of amusement but devices such as jukeboxes and video games. The question devolves to one of pure statutory interpretation and analysis, determinable only on accurate apprehension of legislative expression and intent.
 

 What, then, is the expressed and intended scope of Tax Law § 1105 (f) (1)? The Court’s cardinal function in interpreting any statute should be to " 'attempt to effectuate the intent of the Legislature, and where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used’ ”
 
 (Doctors Council v New York City Employees’ Retirement Sys.,
 
 71 NY2d 669, 674-675, quoting
 
 Patrolmen’s Benevolent Assn. v City of New York,
 
 41 NY2d 205, 208). Thus, the "resort to extrinsic matter is inappropriate when the statutory language is unambiguous and the meaning unequivocal”
 
 (Sega v State of New York,
 
 60 NY2d 183, 191). When, however, due to nuances and variations of human language, reasonable minds differ as to the perceived meaning of the words used, the Court resorts to rules of construction and interpretation of the enactment with reference to the objectives sought to be achieved and the contextual spirit and purpose of its enactment
 
 (see, Matter of Petterson v Daystrom Corp.,
 
 17 NY2d 32, 38).
 

 Ambiguity in tax statutes should, of course, "be construed in favor of the taxpayer and against the taxing authority, and the burdens they impose are not to be extended by implication”
 
 (Matter of American Cyanamid & Chem. Corp. v Joseph,
 
 308 NY 259, 263;
 
 Quotron Sys. v Gallman,
 
 39 NY2d 428, 431). Correspondingly, tax statutes should be construed to insure the collection of all designated taxes where a supportable theory can be found
 
 (see, County of Nassau v Lincer,
 
 254 App Div 760,
 
 affd
 
 280 NY 662;
 
 see also,
 
 McKinney’s Cons Laws of NY, Book 1, Statutes § 313). As often happens, generalities of construction axioms neutralize one another, and courts inevitably return to the precise language of the enactment in an effort to give a correct, fair and practical construction that properly accords with the discernible intention and expression
 
 *245
 
 of the Legislature (3A Sutherland, Statutory Construction § 66.01, at 11 [Singer 4th ed]).
 

 Once again, we note that the critical words here are "admission charge” and "place of amusement.” These terms are expansively defined and unqualifiedly intoned, and Tax Law § 1101 does not limit their sweep in the way appellant urges. Thus, without resorting to extrinsic materials, the Legislature’s plain expression captures appellant’s admission receipts derived from this form of amusement in these places.
 

 The facts are uncontroverted that the mechanics for utilizing the live peep shows and fantasy booth are essentially the same. The patron enters a place, the booth, with a door that closes behind the patron. After entering the booth, the patron could place coins in a slot which raises a screen or curtain and enables the patron to view a live performance or converse with a scantily clad performer. A light illuminated outside the booth indicates the booth is in use. The booth provides the patron with privacy, screens out noise and light, and ensures that each patron pays a separate admission fee. The length of amusement time is controlled exclusively by the number of coins deposited by the patron in the mechanical slot which controls movement and placement of the screen or curtain. The booth thus qualifies as a place of amusement and the coin deposit qualifies as an admission charge within the contemplation and embrace of the taxing statute.
 

 Notably, there can be no doubt that the sales tax would apply if patrons viewed the same live performance in the company of other audience members in a theater
 
 (see,
 
 20 NYCRR 527.10 [b] [3]). The booths are factually not taxably distinguishable from a usual theater except for the element of privacy. Accordingly, the fee paid is an admission charge to a place where entertainment is provided. That the charge is collected after the patron enters the booth by means of a coin-operated device is not of determinative legal significance.
 

 Although resort to statutory rules of construction is unnecessary in view of our plain language analysis of the statute, we discern additional support for the taxing authority’s position in that complementary approach as well. Section 1105 (f) (1) excludes certain admission charges to specific places of amusement from the broad scope of the taxing statute. Live peep show booths and fantasy booths are not exempted. Thus, the interpretative maxim, the expression of one is the exclusion of others, supports the conclusion that what was omitted
 
 *246
 
 from the exemptions was not intended to be excluded from the otherwise comprehensive taxable sweep of section 1105 (f) (1)
 
 (see, Golden v Koch,
 
 49 NY2d 690;
 
 see also,
 
 McKinney’s Cons Laws of NY, Book 1, Statutes § 240).
 

 Fairland Amusements v State Tax Commn.
 
 (66 NY2d 932) does not support a contrary result. The situation in
 
 Fairland
 
 is distinguishable because no comparable threshold ambiguity exists in the present case and that case does not erect a general threshold ambiguity around the phrase "place of amusement”. Moreover, the nature of the entertainment at issue — privately viewing or speaking with live performers for sexual amusement — is not comparable to the use of mechanical devices, such as amusement rides. At bottom, appellant’s building, booths and physical spaces are not at all like fairgrounds.
 

 It is also clear that the live peep shows differ from mechanical "devices for amusement” in that the entertainment places at issue here involve the viewing and interacting with a live performer, which presents a spontaneous, human feature not found in coin operated electronic solo entertainment devices. In essence, these commercial transactions reflect the collection of an admission charge for paying customers to be amused by live sex shows and "fantasy” experiences. To treat the charge as one imposed for the use of a "device for amusement,” as appellant suggests, would contradict the core reality of these human exchanges and taxable transactions
 
 (contrast, Bathrick Enters. v Murphy,
 
 27 AD2d 215,
 
 affd
 
 23 NY2d 664).
 

 Appellant’s further reliance on a string of additional cases is also misplaced
 
 (see, Outdoor Amusement Bus. Assn. v State Tax Commn.,
 
 84 AD2d 950,
 
 revd on dissenting mem below
 
 57 NY2d 790;
 
 Matter of United Artists Theatre Circuit v State Tax Commn.,
 
 52 NY2d 1013;
 
 Matter of Hospital Tel. Sys. v New York State Tax Commn.,
 
 36 NY2d 746,
 
 affg
 
 44 AD2d 271). Each of those cases presented situations factually and significantly distinct from this one. Thus, they do not support the view that the sales tax at issue was invalidly imposed.
 

 Finally, we reject appellant’s argument that the Department’s tax treatment of booths in which films are activated by a mechanical device is inconsistent with its treatment of live peep show booths. As the concurring Justice at the Appellate Division correctly observed, the two transactions are sufficiently distinguishable to allow differential tax treatment that may not be judicially countermanded
 
 (Matter of 1605 Book
 
 
 *247
 

 Ctr. v Tax Appeals Tribunal,
 
 188 AD2d 694, 697,
 
 supra
 
 [Levine, J., concurring]).
 

 We have considered appellant’s other arguments and conclude that they are without merit or unpreserved.
 

 Accordingly, the judgment of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Smith and Ciparick concur; Judges Titone and Levine taking no part.
 

 Judgment affirmed, with costs.