■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STEPHEN FOX, Appellant. [771 NYS2d 156]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Reichbach, J.), rendered May 3, 2001, as amended May 17, 2001, convicting him of murder in the second degree, arson in the second degree, and reckless endangerment in the first degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant's challenge to the legal sufficiency of the evidence is unpreserved for appellate review (*see* CPL 470.05 [2]; *People v Gray,* 86 NY2d 10 [1995]; *People v Pacheco,* 307 AD2d 328 [2003], *lv denied* 100 NY2d 623 [2003]). In any event, viewing the evidence in the light most favorable to the prosecution (*see People v Contes,* 60 NY2d 620 [1983]), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence (*see* CPL 470.15 [5]).

The charges herein stem from an April 27, 2000, fire initiated at a structure erected by a group of homeless people for overnight lodging, located on 65th Street and Fourth Avenue, under the Gowanus Expressway overpass, in Brooklyn. The structure's two side walls consisted of two parallel existing fixed and unmovable fences. The remaining two walls consisted of carpets draped over a clothesline that extended between the two fences. A piece of plywood provided additional support to one side of the structure and buttressed it against strong winds. The entrance was covered by shower curtains and blankets and the entire shelter was covered by a 30 by 50 foot blue tarp. The

residents slept in sleeping bags or on mattresses which were laid on carpeting on the ground. Electricity was supplied by an extension cord that was connected to a light socket at a nearby subway station. During the winter months, electric and kerosene space heaters were utilized to warm the structure. The central issue on appeal is whether the structure constituted a "building" within the meaning of Penal Law § 150.15 which could be the subject of the crime of arson in the second degree.

The term "building" is broadly defined in Penal Law § 150.00 (1) to include its "ordinary meaning" as well as "any structure, vehicle or watercraft used for overnight lodging of persons, or used by persons for carrying on business therein." It is a well-settled rule of statutory construction that a court's function is to "attempt to effectuate the intent of the Legislature, and where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used" (*Matter of 1605 Book Ctr. v Tax Appeals Tribunal of State of N.Y.,* 83 NY2d 240, 244 [1994] [internal quotation marks omitted], *cert denied* 513 US 811 [1994]; *Doctors Council v New York City Employees' Retirement Sys.,* 71 NY2d 669, 674-675 [1988]; *Patrolmen's Benevolent Assn. of City of N.Y. v City of New York,* 41 NY2d 205, 208 [1976]; *see* McKinney's Cons Laws of NY, Book 1, Statutes § 232).

The "ordinary meaning" of the term "building" has been alternatively defined as "a constructed edifice designed to stand more or less permanently, covering a space of land, usu[ally] covered by a roof and more or less completely enclosed by walls, and serving as a dwelling" (Webster's Third New International Dictionary of the English Language Unabridged), "a structure with a roof and walls" (Concise Oxford English Dictionary [10th ed 2002]) and "[a] structure or edifice inclosing a space within its walls and usually, but not necessarily, covered with a roof" (Blacks Law Dictionary [5th ed 1979]). The term generally, though not always, implies the idea of a habitat for a person's permanent use or an erection connected with his or her permanent use (*see Rouse v Catskill & N.Y. Steam-Boat Co.,* 13 NYS 126, 127 [1891], *affd* 133 NY 679 [1892]). The structure need not, however, be fully completed or occupied (*see People v Richberg,* 56 AD2d 279 [1977]; *see also People v Angel,* 178 AD2d 419 [1991] [construing the statutory definition of building for the crime of burglary pursuant to Penal Law 140.00]; *People v Fennell,* 122 AD2d 69 [1986]; Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law art 150, at 144-145).

At the time of the incident, a number of the shelter's

residents, including, apparently, the decedent, had been utilizing the structure for overnight lodging for several months. Moreover, it contained substantial indicia of a permanent or long-term habitat (e.g., incorporation of the two fixed fences, a roof, plywood, carpeting, and diverted electrical service). Therefore, we conclude, consistent with the legislative intent of the statute, that the structure satisfied the statutory definition of a building either because it had been utilized for overnight lodging or because it fits within the "ordinary meaning" of the term.

Taking into consideration the totality of the evidence, the law, and the circumstances of the case, it is evident that the defendant received meaningful assistance from his trial counsel (*see People v Benevento,* 91 NY2d 708, 712 [1998]; *People v Baldi,* 54 NY2d 137, 146 [1981]). The defendant failed to demonstrate the absence of any strategic or legitimate explanation for his counsel's conduct at trial (*see People v Anderson,* 305 AD2d 611, 612 [2003]; *People v Hall,* 267 AD2d 473, 474 [1999]). S. Miller, J.P., Goldstein, Adams and Crane, JJ., concur.