■ In the Matter of HDV MANHATTAN, LLC, et al., Petitioners, v TAX APPEALS TRIBUNAL OF THE STATE OF NEW YORK et al., Respondents. [67 NYS3d 313]—

Clark, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal sustaining a sales and use tax assessment imposed under Tax Law articles 28 and 29.

Petitioners, a limited liability company and its members, operate the Hustler Club, an adult establishment that offers live, semi-nude entertainment to its patrons in Manhattan.[1] The club's public area is comprised of a main stage surrounded by tables and chairs and two additional stages located on balconies on opposite sides of the club overlooking the main

---

1. Although the caption of this proceeding has not been amended, the limited liability company that owns the Hustler Club is now known as CMSG Restaurant Group, LLC.

stage, also with surrounding tables and chairs. In addition, the club has 16 private rooms—four of which include poles—where paying customers can receive private dances from entertainers. To obtain a private dance during the period in question, customers were required to pay a "room charge" to the club by credit card and an additional fee directly to the entertainer, which could be paid in cash or, if the customer paid by credit card, with scrip—a form of in-house currency that the club sold to its customers at a 20% markup (e.g., $100 of scrip cost $120). Customers could also use scrip to tip entertainers, floor hosts and bartenders and to purchase "table dances" from entertainers in the main area of the club.[2] In addition to the 20% surcharge imposed on its scrip-purchasing customers, the club charged entertainers and floor hosts a fee to redeem the scrip paid to them by patrons. Specifically, the club collected 10% of the face value of scrip redeemed by entertainers and 30% of the face value of scrip redeemed by floor hosts. The club recorded the amount paid to it by floor hosts as "service fee income."

In December 2008, the Department of Taxation and Finance commenced a sales and use tax audit of the club's tax liability for the period of June 1, 2006 through November 30, 2008. At the conclusion of the audit, the Department issued separate notices of determination to each petitioner asserting a tax deficiency of over $4.8 million, plus penalties and statutory interest. Following conciliation conferences, the asserted tax deficiency was reduced to $2,113,204.38, plus statutory interest, and all penalties were abated. Petitioners thereafter filed petitions for redetermination with the Division of Tax Appeals, arguing that no tax deficiency existed for the audit period. The matter proceeded to an evidentiary hearing before an Administrative Law Judge (hereinafter ALJ), at which the parties solely disputed whether the club's sale of scrip and the service fee income were taxable. The ALJ found that petitioners owed taxes on both the sale of scrip and the service fee income and sustained the notices of determination, as modified by the orders of conciliation. Petitioners filed exceptions and, following oral argument, respondent Tax Appeals Tribunal reversed that portion of the ALJ's determination holding that the amounts attributable to service fee income were taxable, but otherwise sustained the determination. Petitioners then commenced this CPLR article 78 proceeding challenging the Tribunal's determination, and we now confirm.

---

2. Scrip could not be used to pay for entry into the club, beverages or merchandise.

We begin our discussion with a reminder of the limited scope of review that this Court may employ in cases where, as here, the issues argued before the Tribunal involved the "specific application of . . . broad statutory term[s] in a proceeding in which the agency administering the statute must determine it initially" (*Matter of American Tel. & Tel. Co. v State Tax Commn.*, 61 NY2d 393, 400 [1984] [internal quotation marks and citation omitted]; *accord Matter of O'Brien v Spitzer*, 7 NY3d 239, 242 [2006]; *Matter of Easylink Servs. Intl., Inc. v New York State Tax Appeals Trib.*, 101 AD3d 1180, 1181-1182 [2012], *lv denied* 21 NY3d 858 [2013]). In such cases, we accord deference to the Tribunal's interpretation of the statutes at issue, administered by the Department (*see Matter of Lake Grove Entertainment, LLC v Megna*, 81 AD3d 1191, 1192 [2011]; *Matter of Island Waste Servs., Ltd. v Tax Appeals Trib. of the State of N.Y.*, 77 AD3d 1080, 1082 [2010], *lv denied* 16 NY3d 712 [2011]), and we will not disturb the Tribunal's determination if it has a rational basis and is supported by substantial evidence (*see Matter of Great Lakes-Dunbar-Rochester v State Tax Commn.*, 65 NY2d 339, 343 [1985]; *Matter of American Tel. & Tel. Co. v State Tax Commn.*, 61 NY2d at 400; *Matter of Jay's Distribs., Inc. v Boone*, 148 AD3d 1237, 1238 [2017], *lv denied* 29 NY3d 918 [2017]).

Turning to the merits, petitioners argue that the club's sale of scrip is not taxable under Tax Law § 1105 (f) (1) because it does not qualify as an "[a]dmission charge," as defined in Tax Law § 1101 (d) (2), to a place of amusement. Pursuant to Tax Law § 1105 (f) (1), a sales tax of 4% is imposed on "[a]ny admission charge . . . in excess of [10] cents to or for the use of any place of amusement in the state, except charges for admission to . . . dramatic or musical arts performances." For purposes of the statute, an "[a]dmission charge" is defined as "[t]he amount paid for admission, including any service charge and any charge for entertainment or amusement or for the use of facilities therefor" (Tax Law § 1101 [d] [2]). Further, "it shall be presumed that all receipts for . . . all amusement charges of any type mentioned in [Tax Law § 1105 (f)] are subject to tax until the contrary is established, and the burden of proving that any . . . amusement charge . . . is not taxable [t]hereunder shall be upon the person required to collect tax or the customer" (Tax Law § 1132 [c] [1]).

We find no basis to disturb the Tribunal's determination that the club's receipts from the sale of scrip are taxable as admission charges to a place of amusement. As the Tribunal recognizes, the definition of admission charge in Tax Law § 1101 (d)

(2), as well as the relevant regulation (*see* 20 NYCRR 527.10 [b] [1] [i]), establish that, for the purposes of Tax Law § 1105 (f) (1), an admission charge includes any additional cost for entertainment or amusement that must be paid to gain access to the place of amusement—here, the private room.[3] Although petitioners argued that the fee for the private room and the fee for the private dance were separate, they failed to come forward with evidence establishing that one fee could be paid without the other. The record is devoid of any evidence demonstrating that patrons could, and did, purchase time in a private room without also purchasing a private dance from an entertainer. As such, it was not unreasonable for the Tribunal to conclude that payment of both the room fee and the entertainer's fee were required to gain entry into one of the private rooms and, thus, that both fees constituted an admission charge. Additionally, although the record establishes that patrons could pay entertainers in cash, petitioners produced no evidence as to the frequency with which patrons would use cash, rather than purchasing scrip. In view of the foregoing, we find that the Tribunal rationally determined that the purchase of scrip to pay for a private dance constituted an admission charge within the meaning of Tax Law § 1105 (f) (1) (*see* Tax Law § 1101 [d] [2]; *see generally Matter of 1605 Book Ctr. v Tax Appeals Trib. of State of N.Y.*, 83 NY2d 240, 245 [1994], *cert denied* 513 US 811 [1994]; *compare Fairland Amusements v State Tax Commn.*, 66 NY2d 932, 934-935 [1985], *revg* 110 AD2d 952 [1985]). Relatedly, although some scrip sold to customers may have been used to tip or to purchase table dances, petitioners failed to establish the amount of scrip sold that was attributable to these transactions. In the absence of such evidence, we will not disturb the Tribunal's determination that all scrip sales were presumptively taxable (*see* Tax Law § 1132 [c] [1]).

Next, petitioners assert that, even if the sale of scrip is a taxable admission charge under Tax Law § 1105 (f) (1), they are exempt from the amusement tax because the purchase of scrip to pay for private dances qualifies as a charge for admission to a dramatic or musical arts performance. While Tax Law § 1105 (f) (1) imposes sales tax on admission charges in excess

---

3. There is no dispute that a private room at the club constituted a "place of amusement" under Tax Law § 1105 (f) (1) (*see* Tax Law § 1101 [d] [10]; 20 NYCRR 527.10 [b] [3] [i]; *Matter of 1605 Book Ctr. v Tax Appeals Trib. of State of N.Y.*, 83 NY2d 240, 245 [1994], *cert denied* 513 US 811 [1994]; *Matter of 677 New Loudon Corp. v State of N.Y. Tax Appeals Trib.*, 85 AD3d 1341, 1343 [2011], *affd* 19 NY3d 1058 [2012], *cert denied* 571 US —, 134 S Ct 422 [2013]).

of 10 cents to any place of amusement in the state, the Legislature, "with the evident purpose of promoting cultural and artistic performances in local communities, . . . created an exemption that excluded from taxation admission charges for a discrete form of entertainment—'dramatic or musical arts performances' " (*Matter of 677 New Loudon Corp. v State of N.Y. Tax Appeals Trib.*, 19 NY3d 1058, 1060 [2012], *cert denied* 571 US —, 134 S Ct 422 [2013], quoting Tax Law § 1105 [f] [1]). The taxpayer bears the burden of establishing that the exemption applies (*see Matter of 677 New Loudon Corp. v State of N.Y. Tax Appeals Trib.*, 19 NY3d at 1060; *Matter of Grace v New York State Tax Commn.*, 37 NY2d 193, 195 [1975]; *Matter of Lake Grove Entertainment, LLC v Megna*, 81 AD3d at 1192). Furthermore, in matters of statutory construction, any ambiguity or uncertainty must be construed against the exemption and in favor of the taxing authority (*see Matter of 677 New Loudon Corp. v State of N.Y. Tax Appeals Trib.*, 19 NY3d at 1060; *Matter of Charter Dev. Co., L.L.C. v City of Buffalo*, 6 NY3d 578, 582 [2006]; *Matter of City of Lackawanna v State Bd. of Equalization & Assessment of State of N.Y.*, 16 NY2d 222, 230 [1965]).[4]

The parties do not dispute that the claimed exemption has, as found by the Tribunal, both a venue requirement and a content requirement. Indeed, for the purposes of Tax Law § 1105 (f) (1), a "[d]ramatic or musical arts admission charge" is defined as "[a]ny admission charge paid for admission to *a theatre, opera house, concert hall or other hall or place of assembly* for a *live dramatic, choreographic or musical performance*" (Tax Law § 1101 [d] [5] [emphasis added]). Upon review of the record, we find that the Tribunal did not err in concluding that petitioners failed to come forward with sufficient proof to establish each of these requirements.

First, with respect to the venue requirement, it was incumbent on petitioners to establish that the private rooms constituted "a theatre, opera house, concert hall or other hall or place of assembly" (Tax Law § 1101 [d] [5]). In our view, the Tribunal properly reasoned that, based on the evidence proffered by petitioners, the private room lacked the common characteristics of the settings described in Tax Law

---

4. While petitioners argue that the exception found in Tax Law § 1105 (f) (1) is an exclusion, rather than an exemption, the Court of Appeals has treated this particular exception as an exemption (*see Matter of 677 New Loudon Corp. v State of N.Y. Tax Appeals Trib.*, 19 NY3d at 1060).

§ 1105 (f) (1).[5] Petitioners' failure to satisfy the venue requirement forecloses application of the claimed exemption.

In any event, even if petitioners satisfied the venue requirement, we would nonetheless find that petitioners did not meet the content requirement of Tax Law § 1105 (f) (1). The Tribunal's determination that "petitioners have failed to credibly depict the private dance experience in sufficient detail to establish that experience as dramatic or choreographic" is rational and supported by substantial evidence. Petitioners presented testimony from two witnesses who were qualified as experts in dance choreography. Each expert witness opined that, based upon their respective personal observations and interviews with various entertainers, the private dances constituted "live dramatic, choreographic or musical performance[s]" (Tax Law § 1101 [d] [5]; see Tax Law § 1105 [f] [1]). However, their testimony did not specifically describe the private dances, which were characterized as being "very similar" to table dances, and did not address the particular dance moves observed tableside or in private rooms. In addition, while one of the club's entertainers testified that she performed routines in the private rooms, particularly in the few private rooms that included poles, she also stated that dancing did not always occur in the private rooms. She asserted that, sometimes, she would have a conversation with the customer, allow the customer to cry, convince the customer to get on the pole or do "whatever ma[de] the time go by as fast as possible." In short, the record as a whole failed to clearly depict the type of activity that took place in the private rooms.

Furthermore, the Tribunal discredited the descriptions given by petitioners' expert witnesses as to the private dances, on the basis that they were working for the club at the time that they received the private dances and the entertainers who gave the private dances were aware of that fact. The Tribunal's credibility determinations in this regard lie within its exclusive province and, as the reason proffered by the Tribunal for discrediting the expert testimony is supported by the record and has a rational basis, we are without authority to disturb it (see Matter of 677 New Loudon Corp. v State of N.Y. Tax Appeals Trib., 19 NY3d at 1060-1061; Matter of Di Maria v Ross, 52 NY2d 771, 772 [1980]; Matter of Halloran v Kirwan, 28 NY2d 689, 691 [1971]). Finally, although petitioners' expert

---

5. Given that the venue requirement was plainly in issue, we are unpersuaded by petitioners' assertion that the Tribunal improperly raised the question of whether the private rooms were public or communal in nature.

witnesses testified that the entertainers' performances were dramatic because they dressed in costume and assumed a certain persona while working, we cannot say that the Tribunal acted irrationally in concluding that "a more formal or structured performance is necessary to qualify as dramatic for purposes of the exemption" in Tax Law § 1105 (f) (1) (*see* Tax Law § 1101 [d] [5]; 20 NYCRR 527.10 [d] [2] [stating that "(d)ramatic and musical arts performances do not include variety shows, magic shows, circuses, animal acts, ice shows, aquatic shows and similar performances"]). Considering the foregoing, we find no basis to disturb the Tribunal's determination that the club's sale of scrip did not qualify for an exemption under Tax Law § 1105 (f) (1).

Petitioners further challenge the Tribunal's determination that the club's sale of scrip is alternatively taxable under Tax Law § 1105 (f) (3), as "charges of a roof garden, cabaret or other similar place in the state." A "[c]harge of a roof garden, cabaret or other similar place" means "[a]ny charge made for admission, refreshment, service, or merchandise at a roof garden, cabaret or other similar place" (Tax Law § 1101 [d] [4]) and, under the pertinent regulation, includes charges for "music or entertainment . . . [or] service" (20 NYCRR 527.12 [b] [1]). The phrase "roof garden, cabaret or other similar place," in turn, means "[a]ny . . . place which furnishes a public performance for profit, *but not including* a place where merely live dramatic or musical arts performances are offered in conjunction with the serving or selling of food, refreshment or merchandise, so long as such serving or selling of food, refreshment or merchandise is merely incidental to such performances" (Tax Law § 1101 [d] [12] [emphasis added]; *see* 20 NYCRR 527.12 [b] [2]).

The Tribunal explicitly found that the club furnished public performances for profit through its offerings of stage dances and table dances and, therefore, qualified as a cabaret or similar place within the meaning of Tax Law § 1105 (f) (3). This finding is certainly supported by the record, as there was ample testimony that entertainers would perform on one of three public stages in the main area of the club or tableside at one of the many tables surrounding the stages, all of which were viewable to patrons who paid general admission into the club. Accordingly, the Tribunal rationally concluded that the club is a cabaret or other similar place—that is, a place which furnishes public performances for profit (*see* Tax Law §§ 1105 [f] [3]; 1101 [d] [12]; *Matter of 677 New Loudon Corp. v State of N.Y. Tax Appeals Trib.*, 85 AD3d at 1346). Additionally, given

that "charges of a . . . cabaret or other similar place" include service and entertainment charges (see Tax Law § 1101 [d] [4]; 20 NYCRR 527.12 [b] [1]), the revenue generated from the sale of scrip—which could be used to tip or purchase table dances and/or private dances—is properly taxable under Tax Law § 1105 (f) (3).

Petitioners argue, however, that the sale of scrip qualifies for the exclusion set forth in Tax Law § 1105 (f) (3) because it is "a place where merely live dramatic or musical arts performances are offered in conjunction with the serving or selling of . . . refreshment or merchandise" and "such serving or selling . . . is merely incidental to such performances" (Tax Law § 1101 [d] [12]). The Tribunal found that, while public performances for profit were offered in the main area of the club, the club also offered nonpublic performances in the form of private dances in one of the club's 16 private rooms, which were viewable only to the paying customer. This finding is both rational, as the Tribunal afforded the word "public" its plain and ordinary meaning in reaching its conclusion that the private dances were nonpublic performances, and fully supported by the record. Considering that, as established by the record, the private dances made up a significant portion of the club's "entertainment offerings,"[6] a rational basis exists for the Tribunal's further determination that, even if the stage performances and table dances were live dramatic or musical arts performances, the club did not "merely" offer such performances, so as to bring the sale of scrip within the ambit of the exclusion (Tax Law § 1101 [d] [12]). As such, we discern no basis on which to disturb the Tribunal's determination that the exclusion set forth in Tax Law § 1105 (f) (3) is inapplicable.

Finally, we are unpersuaded by petitioners' various constitutional arguments (see generally Matter of 677 New Loudon Corp. v State of N.Y. Tax Appeals Trib., 85 AD3d at 1346-1347)—many of which are, in essence, a repetition of challenges that were previously raised by petitioners and rejected by the First Department (see CMSG Rest. Group, LLC v State of New York, 145 AD3d 136 [2016], appeal dismissed and lv denied 29 NY3d 929 [2017], cert denied 583 US — [Oct. 30, 2017]). Petitioners' remaining arguments are either unpreserved, rendered academic or lacking in merit.

McCarthy, J.P., Lynch, Devine and Pritzker, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.

---

6. We note that one of the club's entertainers also testified that, in addition to performing on stage and providing table dances and private dances, she would entertain customers by flirting or conversing with them.