Matter of Gelco Corp. v State of N.Y. Tax Appeals Trib. (2026 NY Slip Op 00553)

Matter of Gelco Corp. v State of N.Y. Tax Appeals Trib.

2026 NY Slip Op 00553

Decided on February 5, 2026

Appellate Division, Third Department

Garry, P.J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 5, 2026

CV-24-1376

[*1]In the Matter of Gelco Corporation, Now Known as Element Fleet Corporation, Petitioner,
vState of New York Tax Appeals Tribunal et al., Respondents.

Calendar Date:November 19, 2025

Before: Garry, P.J., Aarons, Pritzker, Powers and Corcoran, JJ.

Ackerman LLP, New York City (Michael J. Bowen of Ackerman LLP, Tallahassee, Florida, of counsel, admitted pro hac vice), for petitioner.
Letitia James, Attorney General, Albany (Owen Demuth of counsel), for Acting Commissioner of Taxation and Finance, respondent.

Garry, P.J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal sustaining a sales tax assessment imposed under Tax Law articles 28 and 29.
Petitioner is a fleet management company that leases fleets of commercial vehicles to businesses throughout the country, including New York. The lease agreement that was generally used by petitioner during the relevant period was for a minimum of 367 days, with an option at the expiration of the lease term for the lessee to renew the agreement on a monthly basis up to a maximum term. Petitioner's leases also contained a terminal rental adjustment clause (hereinafter TRAC). Pursuant to the TRAC provision, a lessee would pay an estimated amount of rent monthly based on the projected residual book value of the leased vehicle at the termination of the agreement, and, at termination, that estimated rent would be adjusted upward or downward retrospectively to determine what the actual rent was. If the residual book value of a leased vehicle at termination was less than what was projected, then actual rent was in fact higher and the lessee would be required to pay additional rent. Conversely, if the residual book value of the leased vehicle at the expiration of the lease was greater than projected, the actual rent was less than estimated, entitling the lessee to a refund of rent. When any such lease term commenced, petitioner, as required by Tax Law § 1111 (i) (B), reported and remitted sales tax based on the statutorily-deemed receipts for the first 32 months of the lease, calculated using the estimated rent schedule set forth in the lease agreement (see generally Tax Law § 1111 [i] [A]). If the lease of a vehicle extended beyond 32 months, then, beginning in month 33, petitioner would collect taxes as part of monthly rent until the lease terminated. When a lease was terminated and the actual rent was calculated, petitioner reported and remitted additional sales tax to the Department of Taxation and Finance if the lessee was required to pay additional rent. If the actual rent calculation resulted in a partial refund of rent to the lessee, petitioner refunded the lessee both the excess rent and the sales tax paid thereon and subsequently took credits on its New York sales and use tax returns to recover the overpaid sales tax that it refunded.
In 2015, the Department conducted a sales and use tax audit of petitioner for the period of June 2012 through August 2015 and concluded that petitioner was not entitled to take such credits, resulting in additional sales tax due in the amount of $2,790,956.23, with interest but without penalty.[FN1] A conciliation conferee subsequently issued an order sustaining the assessment. In 2018, petitioner filed a petition with the Division of Tax Appeals, asserting, among other things, that Tax Law § 1111 (i) (B) permits the imposition of sales tax on commercial motor vehicle leases with TRAC provisions [*2]only on the "consideration . . . contracted to be given," which necessarily encompasses the lease-end TRAC adjustment, and that the taxation of estimated rent without permitting corresponding adjustment of the tax remittance for negative TRAC adjustments is inconsistent with the statute's plain text. The Department answered that sales tax liability was irrevocably fixed at lease inception and that neither the statute nor the regulations in effect at the time permitted any posttransaction adjustment to reduce tax once the deemed receipts are taxed. The parties waived their right to a hearing, and an Administrative Law Judge ultimately agreed with the Department, as did the Tax Appeals Tribunal. This CPLR article 78 proceeding ensued.
Our analysis begins with the recognition of two general principles. First, a court's "cardinal function in interpreting any statute should be to attempt to effectuate the intent of the Legislature" (Matter of 1605 Book Ctr. v Tax Appeals Trib. of State of N.Y., 83 NY2d 240, 244 [1994] [internal quotation marks and citations omitted], cert denied 513 US 811 [1994]; see Matter of Walt Disney Co. & Consol. Subsidiaries v Tax Appeals Trib. of the State of N.Y., 42 NY3d 538, 548 [2024], certs denied ___ US ___, ___, 145 S Ct 1125 [2025], 145 S Ct 1126 [2025]). Second, where, as here, the question turns on the proper reading of the statutory text and an accurate apprehension of legislative intent, no deference to the administrative entity is required (see Matter of Jun Wang v James, 40 NY3d 497, 502 [2023]; Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [2006]; Matter of Obus v New York State Tax Appeals Trib., 206 AD3d 1511, 1512 [3d Dept 2022], lv denied 39 NY3d 907 [2023]).
Tax Law § 1105 is the primary sales tax imposition statute, which subjects to tax the "receipts from every retail sale of tangible personal property" (Tax Law § 1105 [a]), including "[a]ny transfer of title or possession or both, exchange or barter, rental, lease or license to use or consume . . . , conditional or otherwise, in any manner or by any means whatsoever for a consideration, or any agreement therefor" (Tax Law § 1101 [b] [5]). Tax Law § 1101 generally defines "[r]eceipt" as the "[t]he amount of the sale price of any property and the charge for any [taxable] service," inclusive of any credits or deductions later allowed by the vendor to the purchaser (Tax Law 1101 [b] [3]; see generally 20 NYCRR 525.2 [a] [1] [iii] [2]). However, Tax Law § 1111 sets forth special rules for computing receipts and consideration in particular transactions (see Tax Law § 1101 [b] [3]), including certain long-term motor vehicle leases (see Tax Law § 1111 [i]). For motor vehicle leases for a term of one year or more that include an indeterminate number of options to renew or other similar contractual provisions or which includes 36 or more monthly options to renew beyond the initial term,[FN2] Tax Law § 1111 (i) (B) provides that "all receipts due or consideration [*3]given or contracted to be given under such lease for the first [32] months, or the period of the initial term if greater, of such lease shall be deemed to have been paid or given and shall be subject to tax" (Tax Law § 1111 [i] [B] [1]; see also Tax Law § 1111 [i] [A] [providing that sales tax due on a lease "shall be collected, as of the date of first payment under such lease"]).
At the outset, petitioner does not seek recognition of a tax credit, or exemption, of the type that must be expressly granted by statute. New York courts have consistently held that exemptions — which operate to relieve a taxpayer from an otherwise properly imposed tax — must be plainly and unambiguously authorized by the Legislature, with a corresponding presumption in favor of the taxing authority (see Matter of Wegmans Food Mkts., Inc. v Tax Appeals Trib. of the State of N.Y., 33 NY3d 587, 592 [2019]; Matter of Charter Dev. Co., L.L.C. v City of Buffalo, 6 NY3d 578, 582 [2006]; Matter of XO Communications Servs., LLC v Tax Appeals Trib. of the State of N.Y., 182 AD3d 717, 718 [3d Dept 2020], lv denied 36 NY3d 903 [2020]). Here, by contrast, the dispute concerns what was subject to tax in the first place, notwithstanding the fact that petitioner utilized a "credit" as an accounting adjustment to recoup tax paid in excess of that base. Any principles of construction thus operate in the opposite manner: the State may tax only that which the Legislature has plainly subjected to tax, and any ambiguity in the definition of the taxable base must be resolved in favor of the taxpayer (see Matter of Wegmans Food Mkts., Inc. v Tax Appeals Trib. of the State of N.Y., 33 NY3d at 592; Matter of 1605 Book Ctr. v Tax Appeals Trib. of State of N.Y., 83 NY2d at 244; Matter of Grace v New York State Tax Commn., 37 NY2d 193, 196 [1975]). Petitioner also does not dispute that Tax Law § 1111 (i) (B) requires some tax to be paid at lease inception. The statute clearly imposes tax at that point, and petitioner's argument does not challenge the timing of the tax.
The operative statutory phrase here is "consideration . . . contracted to be given," which plainly defines the taxable base in terms of the parties' contractual obligations, not merely the amounts initially invoiced ("receipts due") or collected ("consideration given") (Tax Law § 1111 [i] [B]; see McKinney's Cons Laws of NY, Book 1, Statutes § 231). The statute thus requires that we look to the contractual reality of TRAC leases. In a lease with a TRAC provision, the consideration contracted to be given necessarily incorporates lease-end adjustments, whether upward or downward (see generally 26 USC § 7701 [h] [3]). The lessee expressly agrees to make provisional lease payments during the term, and, at lease termination, the final obligation is reconciled based on residual value, market performance or other contractual conditions, with any excess paid during the lease term returned to the lessee. As a result, the initial lease payments [*4]are necessarily provisional estimates rather than fixed consideration, and no final amount of total rent can be said to have been "contracted to be given" until the TRAC reconciliation occurs. Put another way, any amount refunded to the lessee was never truly contracted to be paid and therefore exceeds the statutory tax base (compare Matter of Prima Asphalt Concrete, Inc. v New York State Tax Appeals Trib., 162 AD3d 1281, 1283 [3d Dept 2018], lv denied 32 NY3d 914 [2019]; Matter of Moerdler v Tax Appeals Trib. of State of N.Y., 298 AD2d 778, 778-779 [3d Dept 2002]). Regardless of whether principles of statutory construction are applied in favor of the taxpayer or the taxing authority, this reading represents the only rational interpretation of Tax Law § 1111 (i) (B), as any alternative would produce absurd results: it would ignore the conditional nature of TRAC payments, create a tax that is incapable of precise measurement, tax consideration that the taxpayer was legally obligated to return and ultimately render the statutory phrase "contracted to be given" meaningless.
This textual reading is confirmed by the broader legislative history and context. Since its enactment in 1990, Tax Law §�1111 (i) has reflected the Legislature's effort to address the unique tax consequences of long-term commercial vehicle leases, including those containing TRAC provisions (see L 1990, ch 190, § 181). At that time, the accelerated tax collection regime represented a significant departure from the periodic-payment model that applied to most leases, with the express intent of achieving parity in the tax treatment of long-term leases and installment sales of motor vehicles (see Senate & Assembly Mem in Support, Bill Jacket, L 1992, ch 20 at 12). Although this change had the added, practical benefit of generating immediate sales tax dollars for the State (see Senate & Assembly Mem in Support, Bill Jacket, L 1992, ch 20 at 12), there is no indication that the Legislature intended for consideration that was never truly due in the first instance to be taxed. Indeed, it became evident almost immediately that the statutory text was not well suited to the particular quirks of TRAC arrangements, long-standing in the industry (see Letter from Sen John B. Daly, July 8, 1991, Bill Jacket, L 1992, ch 20 at 6; Letter from Assemblymember James R. Tallon Jr., July 16, 1991, Bill Jacket, L 1992, ch 20 at 7-8). Over the years, Tax Law § 1111 (i) was consistently regarded as unclear regarding how postinception adjustments to lease consideration should affect the tax base (see Senate Introducer's Mem in Support, Bill Jacket, L 2022, ch 87 at 5; Assembly Introducer's Mem in Support, Bill Jacket, L 2021, ch 664 at 9; Senate Introducer's Mem in Support of 2021 NY Senate Bill S4693; Senate Introducer's Mem in Support of 2019 NY Senate Bill S3067; Senate & Assembly Mem in Support, Bill Jacket, L 1992, ch 20 at 12).
In a 2022 chapter amendment, the Legislature codified a mechanism for reconciling [*5]tax paid in excess of the statutory base (see L 2022, ch 87, § 1). However, it did not announce the creation of a new entitlement and instead "clarifie[d] that if a lessor refunds a portion of the receipt or consideration to the lessee, . . . [a] lessor may claim a credit against sales taxes paid . . . on any amount of consideration that was refunded" (Senate Introducer's Mem in Support, Bill Jacket, L 2022, ch 87 at 5 [emphasis added]; see Tax Law § 1111 [i] [B] [2] [ii]; see generally Matter of M.B., 6 NY3d 437, 449-450 [2006]; Matter of Town of New Castle v Kaufmann, 72 NY2d 684, 687 [1988]; Matter of North v Board of Examiners of Sex Offenders of State of New York, 34 AD3d 161, 163 [4th Dept 2006], affd 8 NY3d 745 [2007]). Indeed, the Legislature has repeatedly endeavored to "clarify" how sales tax must be calculated and remitted under lease agreements with TRAC provisions (Senate Introducer's Mem in Support of 2021 NY Senate Bill S4693 ["any decrease in the consideration upon termination of the lease shall allow the lessor to exclude such amount from taxable receipts"]; see Senate Introducer's Mem in Support of 2019 NY Senate Bill S3067 ["any decrease in consideration upon termination of the lease shall allow the lessor to claim a credit or refund of tax on such amount"]; see also 2019 NY Assembly Bill A4070). In doing so, the Legislature recognized that, although the "[Department] has taken the position that fleet vehicle management companies are not entitled to exclude any TRAC adjustment payments to the lessee from receipts subject to sales tax under state laws that broadly prohibit refunds of accelerated sales tax on vehicle lease payments," "commercial TRAC leases are structured differently than other typical lease agreements in that the actual amount of total sales taxes due on the vehicle lease cannot be known until the end of the lease" and "actual sales taxes paid" should be based only on "the actual total final value of the lease" (Senate Introducer's Mem in Support of 2021 NY Senate Bill S4693). Throughout this long history, it is clear that the Legislature understood Tax Law § 1111 (i) (B) as already defining the tax base in terms of consideration actually contracted to be given (see McKinney's Cons Laws of NY, Book 1, Statutes § 223).
Viewed in light of TRAC lease mechanics, the lease payments deemed to be paid at lease inception are provisional estimates used solely for accelerated collection, while only the net amount ultimately owed following lease-end reconciliation constitutes "consideration . . . contracted to be given" (Tax Law § 1111 [i] [B]). Tax paid on any portion of those provisional amounts that is later refunded exceeds the statutory base. Tax Law § 1111 (i) (B) therefore must be read to entitle the taxpayer to recover overpaid tax, while the statute's requirement that sales tax be imposed and collected at lease inception is fully respected. The Tribunal's determination therefore must be annulled.
In light of our [*6]conclusion, we do not address the parties' remaining arguments.
Aarons, Pritzker, Powers and Corcoran, JJ., concur.
ADJUDGED that the determination is annulled, without costs, and petition granted.

Footnotes

Footnote 1: The Department also computed additional sales tax owed for certain lease agreements that contained variable interest rates. It appears that additional amount has since been settled in petitioner's favor and is not at issue on this appeal.

Footnote 2: The motor vehicle weight limit imposed by Tax Law § 1111 (i) is not at issue.